## CHARLESTON.

McMILLAN v. HICKMAN, et al.

Submitted September 9, 1891.—Decided December 19, 1891.

1. JUDGMENT—SALE—PARTIES.

In a proceeding in chancery by a judgment-creditor to subject the real estate of his debtor to the payment of his judgment-lien it is the duty of the plaintiff to make all the lien-creditors of the debtor known to him, and who are disclosed by the judgment-lien-docket, or the records of the courts of the counties in which

the lands sought to be sold are situated, parties to the suit; and where there are liens by trust-deeds the trustees in such deeds must be made formal parties before any sale of the debtor's lands can be ordered, and such trustees can not be made informal parties by publication.

2. JUDGMENT—ABATEMENT.

Where suit is instituted in the name of a party who is dead at the time the suit is brought, and process is duly served upon the defendants, who suffer judgment to be rendered against them without pleading the death of the plaintiff in abatement in proper time during the pendency of the suit, the judgment so obtained is not absolutely void, but is erroneous.

3. JUDGMENT-LIEN.

Such judgment, until reversed in one of the modes prescribed by law, constitutes a lien upon the real estate of the defendant, and may be enforced as other judgment-liens, and is not subject to collateral attack.

*Laird & Taylor* for appellant, cited 16 W. Va. 725; Id. 625; 17 W. Va. 655; 23 W. Va. 656; 31 W. Va. 688; 33 W. Va. 652; 4 Black Comm. 133, 134; Bar. Law Pr. 93; 1 Rob. (old) Pr. 121, 122; 2 Leigh 733; 14 Gratt. 42; Sto. Eq. Pl. § 498; 1 Caines 519; 70 Ill. 65; 5 So. Ca. 159; 24 W. Va. 416, 492; Taney C. C. 362; 3 H. & M. 67; 3 Black. Comm. 301; Tidd Pr. 418, 419; 5 Rob. Pr. 2, 10, 12, 49; Id. 11; 21 Gratt. 685; Sto. Eq. Pl. §§ 14, 707, 708, 710; 3 H. & M. 79, 83-85; 9 Gratt. 379; 11 Gratt. 625; 16 Gratt. 360, 361; 21 Gratt. 362–364; Code, c. 125, s. 16; 3 W. Va. 586; 4 Min. Inst. 625, 1059; Dan. Ch'y Pr. (4th Am. Ed.) 690; Id. 630; Sto. Eq. Pl. § 727; 4 Min. Inst. 627; 1 Laws Rights Rem. Pr. §§ 161, 167; 21 W. Va. 361; 93 U. S. 277; 6 Pet. 709; 22 W. Va. 181; 29 W. Va. 326; 27 W. Va. 658; 7 Gray 505; 44 Cal. 286; 28 W. Va. 601; 127 Mass. 326; 3 Allen 326; 33 W. Va. 229; 12 Am. & Eng. Ency. Law 247 note, 248-251.

*W. L. Miller* for appellee, cited 4 Min. Inst. 627, 1054; 5 Rob. Pr. 49; Id. 14; 6 Rand. 121, 122; 2 Leigh 735; 8 Watts 462; 1 Munf. 284; 2 Munf. 240; Code, c. 125, s. 16; 4 Min. Inst. 1059; Code, c. 125, s. s. 46, 47; 1 Chitt. Pl. 472; Bar. L. Pr. (1877) 100; Code, c. 104, s. 6; Id. c. 89, s. 12; 28 W. Va. 607, 608; 3 Tenn. Ch'y 187; 13 Gratt. 152; 20 W. Va. 351; 27 Gratt. 628; 33 Gratt. 358; 75 Va. 480; Code, c. 134, s. 5; 21 Gratt. 382; 12 W. Va. 298; Id. 750;

20 W. Va. 59; 10 Pet. 447, 449; 27 Gratt. 630, 631; 1 Bar: Ch'y Pr. 248; Code, c. 125, s. 39; 10 W. Va. 507; Sto. Eq. Pl. § 708 and n.; 29 W. Va. 332; 23 W. Va. 656, p't 4 Syll.; Code, c. 139, s. 7; 22 W. Va. 444; 1 Bar. Ch'y Pr. 273; 2 Dan. Ch'y Pr. 1522, 1538; 16 W. Va. 724; 23 W. Va. 656; Code, c. 76; Sedg. & W. Tit. § 336; 2 Rand. 422; 31 W. Va. 688; 33 W. Va. 644.

Eɴɢʟɪꜱʜ, Jᴜᴅɢᴇ:

On the 25th day of November, 1878, a judgment was rendered by the Circuit Court of Doddridge county in favor of Miles White against A. J. Hickman and C. M. Tate on motion for judgment and award of execution on a bond for the forthcoming of property for seven hundred and eighty one dollars, the penalty of said bond and his costs by him expended, to be discharged by the payment of three hundred and eighty one dollars and fifty cents, with interest thereon from the 1st day of October, 1878, until paid; and on the 23d day of March, 1882, another judgment was rendered in favor of said Miles White against A. J. Hickman and C. J. Stuart for the sum of two hundred and five dollars and four cents, with interest from the 20th day of March, 1882, until paid, and costs; and on the 20th day of April, 1883, a chancery suit was instituted in the name of said Miles White as plaintiff against A. J. Hickman, C. M. Tate, C. J. Stuart, and Samuel McMillan, for the purpose of enforcing the lien of said judgments against a tract of land containing one hundred and sixty six acres, owned by said A. J. Hickman, and situated in said county of Doddridge. Said plaintiff also alleged in said bill that the defendant, Samuel McMillan, had a judgment against the defendant Hickman for the sum of two hundred and twenty seven dollars and seventy three cents, with interest from the 10th day of December, 1877, and two dollars and forty cents costs, which was a lien on said land, and was older than the plaintiff's lien; and he prayed that said land might be subjected to the payment of said judgments.

On the 20th day of March, 1884, said chancery cause was heard upon the decree *nisi* and upon the bill taken for con-

fessed, and was argued by counsel, and said cause was referred to a commissioner to ascertain (1) whether the rents and profits of said one hundred and sixty six acres of land would satisfy the plaintiff's judgment in five years;—(2) the liens on said lands, and their priorities;—(3) what, if any, other liens exist against said land.

Said commissioner reported as a *first* lien thereon a deed of trust from J. A. Hickman and wife to A. J. Charter, trustee *etc.*, to secure to L. R. Charter the payment of five hundred dollars due and payable on the 1st day of December, 1878, which deed of trust was dated December 11, 1876, and was acknowledged and recorded the same day ; *second*, the judgment of Samuel McMillan against said A. J. Hickman, which amounted, including interest and costs, to three hundred and eighty four dollars and seven cents; *third*, the judgment of Miles White against A. J. Hickman and C. M. Tate, amounting on March 18, 1889, including interest and costs, to four hundred and seventeen dollars and ninety one cents; *fourth*, said judgment against A. J. Hickman and C. J. Stuart, amounting March 18, 1889, including interest and costs, to three hundred and three dollars and forty two cents; *fifth*, a judgment in favor of Wilson Sewing-Machine Company against A. J. Hickman and others, amounting on the 18th of March, 1889, including interest and costs, to four hundred and forty three dollars and fifty five cents; *sixth*, a judgment in favor of *John F. Boyce* v. *A. J. Hickman*, amounting on the 18th day of March, 1889, to thirteen dollars and eighty five cents, including interest and costs.

C. M. Tate excepted to said commissioner's report : "For that the said commissioner had in and by said report certified that an execution in favor of Miles White against said A. J. Hickman and C. M. Tate was placed in the hands of John Donahue, who was sheriff of Doddridge county, and that a levy was made on the personal property of A. J. Hickman, the principal debtor, sufficient to satisfy said judgment, with what cash payment was made to the said sheriff on said execution, and that the said property was suffered to remain in the possession of the said A. J. Hickman, and not sold, without the consent or knowledge of

said Tate; that he, the said Tate, was the security of said Hickman in said debt, and that he should be released from further liability on the said judgment. Whereas, the said commissioner ought to have certified, in addition to the above certified facts, that the judgment was obtained in the Circuit Court of Doddridge county on the 25th day of November, 1878, for the sum of seven hundred and eighty one dollars and costs, to be discharged by the payment of three hundred and eighty one dollars and fifty cents, with interest thereon from the first day of October, 1878, until paid, and the costs aforesaid; and that the said execution issued on said judgment on June 7, 1879, and was levied on the following property, the property of A. J. Hickman: One black horse, one black mare, one black yearling colt, one yearling heifer, one yearling steer, one spotted cow, eight white and spotted hogs—by Amos Bee, which property was of the value of three hundred and forty one dollars, besides the value of the hogs; and that the following cash payments were made upon said execution : September 15, 1880, forty dollars; October 21, 1880, seventy dollars; and July 14, 1887, fifty dollars. For that the said commissioner did not certify affirmatively that the said C. M. Tate, surety as aforesaid, was released from all liability to the creditor, Miles White, for the said debt evidenced by said judgment," *etc.*

The evidence taken by said commissioner, together with the exhibit, were filed therewith, and made part of said report.

On the 22d of March, 1890, said A. J. Hickman filed with the clerk the deposition of B. F. Haines, dated March 19, 1890, and the deposition of George McCaffray, dated March 20, 1890, from which it appears that said Miles White died in the city of Baltimore, Md., on the 16th day of March, 1876; and on the 25th day of March, 1890, the parties appeared by counsel in said chancery court, and the said A. J. Hickman moved the court to issue a rule in said cause against E. Maxwell and T. W. Harrison, attorneys, and against S. B. McMillan, sheriff, and as such administrator of Miles White, deceased, to show cause, if any they could, why they had acted in contempt and abuse of the process

of the court in said cause, and why said suit, by reason thereof, should not be dismissed, and they be compelled to pay the costs of said Hickman by him expended in this suit in his behalf, which motion was based upon the depositions of said B. F. Haines and George McCaffray; and also presented the depositions of A. J. Hickman and J. M. Wilson, and asked that said depositions be read as the affidavit of the parties, as well as the deed dated May 3, 1871, purporting to be the deed of Miles White and Margaret Purviance, widow and executrix of Robert Purviance, deceased, to J. M. Wilson, which was filed in the cause as "Exhibit H F," and that the papers in the cause might be read in evidence upon the hearing of said motion, which motion having been heard by the court, and the evidence aforesaid considered, the rule moved for was awarded, and the same was docketed on the 21st of July, 1890, and duly served upon the parties, who filed their answers thereto, and on the 26th day of November, 1890.

The questions arising upon said rule were argued by counsel, and upon consideration thereof said rule was discharged. And thereupon the said A. J. Hickman and C. M. Tate tendered their several answers to the plaintiffs, which were ordered to be filed; and the plaintiff replied generally thereto, and the case was heard on the bill and former decrees and proceedings had therein, and on the report of T. K. Knight, commissioner, filed on the 6th day of March, 1889, and the exceptions indorsed thereon by C. M. Tate, and the other exceptions pleading usury, noted in said report as to the judgment of Samuel II. McMillan, and was argued by counsel. On consideration whereof the court held that the plaintiff was entitled to the relief prayed for, and overruled the exceptions and plea of usury of said Hickman, as well as plaintiff, against Samuel McMillan's judgment; and as to the exceptions of said Tate the court held that as, under the present state of proceedings, no relief was prayed or asked for against said Tate, it would decline to pass on said exceptions, and defer the same for future action, should the plaintiff seek relief against said Tate; and that this order and decree should

be without prejudice to the said C. M. Tate to raise the question made by his exceptions in any subsequent proceedings to charge him or his estate with the payment of the judgment against him and the said Hickman.

The court then proceeded to ascertain the aggregate amount of said liens to the parties entitled thereto, as so ascertained, within sixty days, a sale of said one hundred and sixty six acres of land to be made by commissioners therein appointed in the manner and upon the terms therein directed.

The said A. J. Hickman, in his answer filed in the cause, admitted that said judgments were obtained in the name of Miles White for the amounts and at the dates stated in the bill. He also states the date of bringing said chancery suit in the name of Miles White, and that his death was suggested at the March term, 1889, and states that said White was a non-resident of the State, living in the city of Baltimore, and that he was unable to ascertain the date of said White's death, although diligently endeavoring to do so, until February, 1890, when he discovered that he died on the 12th of March, 1876, before any of said actions or said chancery suit was brought; and he alleges that said judgments are nullities, and prays that said chancery suit may be dismissed.

He also states in said answer that on the 11th day of December, 1876, he and his wife conveyed to A. J. Charter the one hundred and sixty six acres in the bill mentioned, in trust to secure to L. R. Charter the sum of five hundred dollars, a part of which remains due and unpaid; and he exhibits a certified copy of said deed of trust and the certificate of the clerk admitting the same to record on the 11th day of December, 1876, and suggests that said L. R. Charter and A. J. Charter ought to be made parties to said chancery suit.

Said Tate also answered said bill, making the same point as to said White being dead before the judgment was obtained against said Hickman and himself, and stating the amount paid on said judgment by Hickman in cash, also enumerating the property that was levied on by the sheriff as the property of Hickman, and alleging that the same

was sufficient to pay off the balance of said judgment, but that the sheriff returned said property to Hickman, and neglected to sell it; that said property was so returned without his knowledge or consent, and that by reason thereof he was released from liability on said judgment.

From the decree aforesaid directing the sale of said land to satisfy said judgment-liens the said A. J. Hickman appealed.

The first error assigned and relied upon by the appellant is that the court erred in decreeing a sale of the one hundred and sixty six acres of land in the bill mentioned before A. J. Charter, trustee in the deed of trust of December 11, 1876, from appellant and wife, was made a formal party to the bill.

Turning to the statute, Code, c. 139, § 7, under the heading, "Suits to Enforce Judgment-Liens," we find it is provided that "in every such suit all persons having liens on the real estate sought to be subjected by judgment or otherwise shall be made parties plaintiff or defendant; or, if the number of such persons exceeds ten, the suit may be brought by any one or more of them for the benefit of himself and such other lienholders as will come in and contribute to the expenses of the suit."

In the case of *Bilmyer* v. *Sherman*, 22 W. Va. 656, this Court held (fifth point of syllabus): "Where there are liens by trust-deeds, the trustees in such deeds must be made formal parties before any sale of the debtor's lands can be ordered. Such trustees can not be made informal parties by publication; and where a decree of sale is made in the absence of a trustee this court will reverse the decree, although the *cestui que trust* had his debt audited in the suit."

In the case of *McCoy* v. *Allen*, 16 W. Va. 725 (third point of syllabus) this Court held: "If a creditor files a bill to subject the real estate of a debtor to a judgment-lien, and in his bill fails to state that there is any other lien on this real estate, or to ask the auditing of other liens, and makes only the debtor a party defendant, though the Court in such cases by its decree directs a commissioner to ascertain all liens and their priorities, still the court can not, upon

the report of the commissioner that a prior deed of trust had been satisfied, decree that the debt secured by it had been paid, and order its release. Such a decree of the Court is a mere nullity, and not binding on the trustee or *cestui que trust*, because they were not parties to the suit; nor does such order of reference, or an actual service of notice by the commissioner on the *cestui que trust*, make him a party, or render such decree valid as against him."

There are other decisions to the same effect, but these are sufficient to show that the question has been settled in this State that the trustee and *cestui que trust* in a deed of trust which constitutes a lien on real estate which a judgment-creditor is seeking by bill in equity to subject to the payment of his lien are necessary and indispensable parties to such a bill; and it is reasonable that the trustee, being the custodian of the legal title, should be before the court when the object of a bill is a sale of the legal title to satisfy the liens existing against the land. It has been held that it is necessary in such a suit to ascertain the liens existing against the land thus sought to be subjected, and it is conceded at once that such an ascertainment would not be binding unless the trustee holding the legal title was before the Court.

The next assignment of error relied on by the appellant is that the court erred in discharging the rule against the complainant McMillan and E. Maxwell and T. W. Harrison, and declaring that they had not acted in contempt and abuse of the process of the court in this cause.

In the case of *Craig* v. *McCulloch*, 20 W. Va. 148 (first point of syllabus) this Court held: "The power of a court to punish for contempt is arbitrary and discretionary with the court against whom or whose orders the offence has been committed; and, proceedings for the punishment of such an offence being in their nature criminal, this Court has no jurisdiction to review the order of the Circuit Court deciding that no contempt has been committed."

In the case of *Alderson* v. *Commissioners*, 32 W. Va. 641 (9 S. E. Rep. 868) this Court held: "An appeal from a decree in a suit in equity will not bring up for review an order discharging a rule to show cause why the party shall

not be punished for contempt in disobeying an order of injunction made in said suit."

This Court also held in the case of *Ruhl* v. *Ruhl*, 24 W. Va. 279 (section 3 of syllabus) : "A contempt of court is in its nature a criminal offence, and the proceeding for its punishment is criminal in its character; consequently the proceedings after the attachment issues are distinct from the suit in which the contempt was committed, and should be entered separately, and entitled in the name of the State against the offender." This being the case, it is apparent at once that an appeal in the chancery cause would not bring up the proceeding in the name of the State against the party charged with contempt.

Snyder, J., in delivering the opinion of the court in *Ruhl* v. *Ruhl*, *supra*, says : "It is claimed, however, that so much of the decree of March 19, 1883, in this cause as pertains to the proceeding against the appellant for contempt, can not be reviewed on appeal, but only, if at all, on a writ of error. *Railroad Co.* v. *Wheeling*, 13 Gratt. 40. As a general proposition, I think this is correct. A contempt of court is in the nature of a criminal offence, and the proceeding for its punishment is in its character a criminal proceeding. Before the attachment for the contempt issues the proceedings are to be entitled in the name of the parties to the suit, but afterwards in the name of the State. *State* v. *Bridge Co.*, 16 W. Va. 864."

Following the rulings in these cases, we can but conclude that the proceedings upon the rule of which the appellant is complaining in his assignment of errors are not brought before us by the appeal in said chancery suit, and the error relied on can not now be considered.

The fourth assignment of error, to wit, that the court erred in not perpetuating and confirming the rule against McMillan, E. Maxwell, and T. W. Harrison, and holding them guilty of contempt and abuse of the process of the court in said cause, has already been disposed of by what we have said in regard to the second assignment of error above quoted.

The third assignment of error, to wit, that "the court erred in overruling petitioners motion to dismiss the suit;"

the fifth, "that the court erred in not dismissing the suit upon the motion of petitioner;" and the seventh, "that the court erred in not declaring the two judgments in favor of Miles White nullities, and not liens upon the one hundred and sixty six acres," may be considered together, as they are all predicated upon the alleged invalidity of said judgments.

One of these judgments was obtained on the 25th day of November, 1878, in the name of *Miles White* v. *J. A. Hickman and C. M. Tate,* on a motion for a judgment and award of execution on a bond for the forthcoming of property. Said forthcoming bond bore date on the 1st day of October, 1878, and was executed by A. J. Hickman, principal, and C. M. Tate as surety; and in the condition of said bond it is recited that, "whereas, the above named Miles White, upon a judgment obtained by him in the Circuit Court in the county of Doddridge, has sued out a writ of *fieri facias* against the goods and chattels of the said A. J. Hickman *etc.,* * * * the amount whereof at this time, including sheriff's fees, commissions and other lawful charges, is three hundred and eighty one dollars and fifty cents." By voluntarily executing this forthcoming bond the said A. J. Hickman and C. M. Tate would be estopped from denying everything therein admitted.

In the case of *Hoke* v. *Hoke,* 3 W. Va. 561, it is held "there is no exception to the rule that the fair and voluntary execution of a sealed instrument is conclusive against all who seal it of everything admitted in it;" citing *Shaw* v. *McCullough,* 3 W. Va. 260; *Cox* v. *Thomas,* 9 Gratt. 312; *Cordle* v. *Burch,* 10 Gratt. 480; *Cecil* v. *Early,* Id. 198.

In this forthcoming bond the fact is admitted that Miles White obtained a judgment in the Circuit Court of Doddridge county, and sued out execution thereon against the goods and chattels of the said A. J. Hickman, which was levied on certain personal property therein named as the property of said Hickman, the amount of which execution, including sheriff's fees and commissions and other lawful charges, was three hundred and eighty one dollars and fifty cents. As to the other judgment of Miles White against A. J. Hickman and C. J. Stuart, it appears that

the defendants were present at the time the judgment was obtained, waived a jury, and submitted to the judgment of the court, which rendered a judgment against them for two hundred and five dollars and four cents, with interest thereon from the 20th day of March, 1882, till paid; and no plea to the jurisdiction appears to have been interposed.

As to the questions which the defendants in this cause raise by their answers filed therein as to the validity of said judgments by reason of the fact that it is shown by depositions filed in the cause that the plaintiff, Miles White, was dead at the time said judgments were obtained, and also at the time said suits were instituted, in our opinion the objection comes too late. If a plea to the jurisdiction had been filed in proper time at law, we have no hesitation in saying that it would have been availing. Our statute, however, provides (section 16 of chapter 125 of the Code) that, "where the declaration or bill shows on its face proper matter for the jurisdiction of the court, no exception for want of such jurisdiction shall be allowed unless it be taken by plea in abatement, and the plea shall not be received after the defendant has pleaded in bar or answered to the declaration or bill after a rule to plead or a conditional judgment or decree *nisi.*" See *Simpson* v. *Edmiston,* 23 W. Va. 675, where it is held that "a plea in abatement to the jurisdiction can not be filed after a conditional judgment or decree *nisi.*"

It appears in the case at bar that on the 26th day of March, 1884, this cause came on to be heard upon the bill and decree *nisi,* and, the defendants still failing to answer, the bill was taken for confessed as to them, and the cause was referred to a commissioner to ascertain whether the rents and profits of the one hundred and sixty six acres of land in the bill mentioned would satisfy the plaintiff's judgments in five years, also to ascertain what judgments were liens on said land, their amounts and priorities; and the answers of A. J. Hickman and C. M. Tate raising the question as to the validity of said judgments on account of the fact that Miles White was not in life at the time said suits were instituted in which said judgments were rendered, were not filed until the 26th day of November, 1890.

This question then being raised by the answers of said Hickman and Tate, although, as we think, raised too late, let us inquire what consequences flow from the fact that the plaintiff Miles White was dead at the time suit was instituted in his name as sole plaintiff for the purpose of obtaining said judgments, no such question having been raised during the pendency of said suits at law, nor after said suit in equity was brought to enforce said judgments against the defendants' lands for six years after the decree *nisi*, and the bill taken for confessed.

Black on Judgments (volume 1, § 204) says, among other things, that, "in order to arrive at a just conclusion on this point it is necessary to take into account the time or stage of the cause at which the decease of the plaintiff occurs; and, first, if an action is commenced in the name of a person already dead (as where the decedent is the nominal plaintiff, and the one for whose benefit the suit is prosecuted is the real party in interest) or if one of several joint claimants is dead before action is brought, it is held that the defendant must take advantage of the facts by plea in abatement at the peril of being estopped by his silence, and the judgment for plaintiff will not be disturbed."

In Freeman on Judgments (section 153) the author says : "Judgments for or against deceased persons are not generally regarded as void on that account. Such judgments have sometimes been upheld in collateral proceedings on the ground that their rendition necessarily implied that the parties were then living, and that this implied finding in support of judgments ought not to be allowed to be impeached by evidence not contained in the record. A suit was prosecuted for the benefit of A. in the name of a nominal plaintiff, who was dead, without any objection being made by the defendant. Judgment was rendered by *nil dicit*. Defendant petitioned for a *supersedeas*. It was denied on the ground that the defendant was estopped from inquiry as to the death of plaintiff by his failure to plead it when he had an opportunity to do so, citing the case of *Powell* v. *Washington*, 15 Ala. 803, where it was held that, "where a suit is instituted by one having the beneficial interest in a note in the name of the payee, who is dead, for

the use of the former, and the defendant appears, and suffers judgment *nil dicit* to be rendered against him, he is estopped from afterwards moving to vacate the judgment on account of the death of the nominal plaintiff; and a security of the defendant in such a case is as much concluded by the judgment as the defendant himself."

In the case of *King* v. *Burdett*, 28 W. Va. 601, it was held: "where process has been regularly served on a defendant, and there is no appearance, and the defendant before judgment dies, and his death is not suggested on the record, and after his death judgment is rendered against him, such judgment is not void, but voidable, and can not be collaterally attacked."

So also in the recent case of *Watt* v. *Brookover*, *supra* p. 323 (13 S. E. Rep. 1007) this Court held: "The fact that a sole plaintiff or one of several plaintiffs is dead at the time of the institution of an action, such death not appearing on the record, does not render a judgment therein void, but only erroneous, and such judgment is a lien on real estate."

We therefore hold that, the death of the plaintiff never having been suggested during the pendency of said suits at law, and the defendants, as appears from the record, being present at the time said judgment was rendered against said Hickman and Stuart, and having failed to appear in the case against Hickman and Tate, although they had legal notice of the motion for said judgment, it is too late to attack the validity of said judgments for want of jurisdiction after a chancery suit has been brought to subject the real estate of the defendant to the satisfaction thereof, which has been pending for more than seven years, notwithstanding the fact that said chancery suit was also instituted in the name of such deceased person.

That such a judgment can not be collaterally attacked, see *Corrothers* v. *Sargent*, 20 W. Va. 351. See, also, *Lancaster* v. *Wilson*, 27 Gratt. 624, where it is held that a judgment of a court of record can not be impeached in another action, except for want of jurisdiction in the court, or fraud in the parties or actors in it." See, also, *Baylor's Lessee* v. *Dejarnette*, 13 Gratt. 152; also, *Gray* v. *Stuart*, 33 Gratt. 351.

As to the action of the court with reference to the exceptions indorsed on said commissioner's report by the defendant Tate, it is sufficient to say that said exceptions are in the interest of said Tate, and he is not an appellant, and is not complaining of the error, if any exists; and said decree appears to have been entered without prejudice to the defendant Tate to raise said questions in any subsequent proceedings to charge him or his estate with the payment of the judgment against him and the said Hickman.

For these reasons the decree complained of must be reversed, with costs, and the cause is remanded, with leave to amend the bill and bring the necessary parties before the court.

REVERSED. REMANDED.