298 S.E.2d 827

**STATE ex rel. KOPPERS CO., INC., etc.**

v.

**INTERNATIONAL UNION OF OIL, CHEMICAL AND ATOMIC WORKERS, etc., et al., Defendants Below, Kenneth Rhodes.**

**STATE ex rel. KOPPERS CO., INC., etc.**

v.

**INTERNATIONAL UNION OF OIL, CHEMICAL AND ATOMIC WORKERS, etc., et al., Defendants Below, Jerald L. Cheek.**

**Nos. 15393, 15394.**

Supreme Court of Appeals of West Virginia.

Oct. 28, 1982.

Dissenting Opinion Dec. 14, 1982.

Neely, J., dissented with an opinion.

Abraham Pinsky, Wellsburg, William Fahey, Weirton, for appellees.

Patrick Cassidy, Patrick M. Flatley, O'Brien, Cassidy & Gallagher, Wheeling, for appellants.

HARSHBARGER, Justice:

The International Union of Oil, Chemical and Atomic Workers, Local Union No. 3–42971's contract with Koppers Co., Inc. expired May 31, 1980. No new agreement was reached, so the union began picketing at Koppers' Follansbee plant on June 1. Koppers convinced a Brooke County Circuit Court judge to issue a temporary injunction on June 9 against mass picketing, traffic or business obstruction, and assaults. Peaceful picketing by four local union picketers at a time on a twenty-foot strip of the plant's private entrance road, was allowed. That injunction was amended on June 25 to prohibit picketing on the twenty-foot strip of land.

Koppers filed fourteen petitions for attachment and for orders to show cause why respondents should not be held in contempt, that were made returnable on August 6, 1980. These hearings were continued until August 14. Six more petitions were filed, also returnable August 14.

Defense counsel requested jury trials, the right to which was guaranteed to criminal contempt defendants in *Hendershot v. Hendershot*, 164 W.Va. 190, 263 S.E.2d 90 (1980). Koppers came to us to prohibit the jury trials, contending that because jail terms were not requested, they were not appropriate; but we refused its petition. More attachment petitions were filed—six on August 28, six on August 29, eighteen on September 9, 1980. All fifty petitions naming forty-nine individuals, including appellants Cheek and Rhodes (many strikers were named in more than one petition, individually and as parts of groups), were set for trials starting September 15, 1980.

The trial court took up pretrial matters on the 15th. During that conference, all contempt cases originally docketed and styled in equity were transferred to the criminal docket and entitled "State of West Virginia on relation of Koppers Company, Inc." Union counsel unsuccessfully moved that they be tried by the county prosecutor, and Koppers' lawyers asked to be appointed special prosecutors. The trial court permitted Koppers' counsel to prosecute, although he did not formally designate them special prosecutors.

The dispositive question is, should private lawyers representing a party that obtained an injunction prosecute criminal contempts arising from injunction violations?

■ A criminal contempt, as opposed to a civil contempt, is prosecuted to vindicate the authority and dignity of a court. *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 276 S.E.2d 812 (1981); *Hendershot v. Hendershot, supra; Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687, 691 (1979); *Eastern Associated Coal Corp. v. Doe*, 159 W.Va. 200, 220 S.E.2d 672 (1975). When a criminal contempt is not committed in a court's presence, it is an indirect (or constructive) contempt. The court is informed of the alleged affront by affidavit and petition for attachment or order to show cause. Issuance of an attachment initiates a separate and distinct criminal proceeding, different from the civil suit that spawned the contempt. *State ex rel. Walker v. Giardina*, 170 W.Va. 483, 294 S.E.2d 900 (1982); *State ex rel. Taylor v. Devore*, 134 W.Va. 151, 58 S.E.2d 641 (1950); *McMillan v. Hickman*, 35 W.Va. 705, 14 S.E. 227, 230 (1891); *Alderson v. Commissioners*, 32 W.Va. 640, 9 S.E. 868, 5 L.R.A. 334, 25 Am.St.Rep. 840 (1889). A criminal contempt should be brought in the name of the State. *Hendershot, supra* at Footnote 1; *McMillan, supra; Alderson, supra.*[1]

■ Indirect criminal contemnors are entitled to the same rights as other criminal defendants, e.g., the presumption of innocence, proof beyond a reasonable doubt, criminal rules of evidence, right to

---

**1.** A civil contempt punishment is coercive, permits a contemnor to purge himself by complying with a court order and thus free himself from imprisonment; criminal contempt sentences are determinate or fixed punishment for past contemptuous acts, and a contemnor cannot purge himself. *Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687 (1979).

"That an act is punished as neither wholly civil nor altogether criminal reflects an impermissible confusion or combination of purpose on the part of the sanctioning court." *State ex rel. Robinson v. Michael, supra*, 166 W.Va. at 671, 276 S.E.2d, at 818.

counsel, full and plain information about the character and cause of the accusation, and admission to bail. *Doctors Memorial Hospital, Inc. v. Woodruff,* 165 W.Va. 324, 267 S.E.2d 620 (1980); *Hendershot, supra; Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468 (1977); *State ex rel. Hoosier Engineering Co. v. Thornton,* 137 W.Va. 230, 72 S.E.2d 203 (1952); *State ex rel. West Virginia-Pittsburgh Coal Co. v. Eno,* 135 W.Va. 473, 63 S.E.2d 845 (1951); *State ex rel. Continental Coal Co. v. Bittner,* 102 W.Va. 677, 136 S.E. 202, 49 A.L.R. 968 (1926); *State v. Davis,* 50 W.Va. 100, 40 S.E. 331 (1901). *See* W.Va. Rules of Criminal Procedure, Rule 42(b). Chief Justice Miller, with Justice McGraw and myself agreeing, suggested that criminal procedure arrest requirements should be imposed when an attachment for criminal contempt is perfected. *Hendershot v. Handlan,* 162 W.Va. 175, 248 S.E.2d 273, 283 (1978) (Miller, J., concurring and dissenting in part). Also, contemnors are entitled to be prosecuted by a state's attorney as are other criminal defendants. It is a standard criminal procedure involving the government's attempt to punish violators of its laws.[2]

■ We have discussed the role of a prosecuting attorney in criminal prosecutions. *State ex rel. Skinner v. Dostert,* 166 W.Va. 743, 278 S.E.2d 624 (1981); *State ex rel. Preissler v. Dostert,* 163 W.Va. 719, 260 S.E.2d 279 (1979); *State v. Atkins,* 163 W.Va. 502, 261 S.E.2d 55 (1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1081, 63 L.Ed.2d 320 (1980). A public prosecutor's fundamental duty is to do justice; his or her presence should protect against overzealousness and an unrestrained pursuit of private vindication. Code of Professional Responsibility, EC–7–13, West Virginia Code, Appendix; ABA Standards of Criminal Justice (2d Ed. 1980), Standard 3–1.1(c); 44 A.B.A.J. 1159, 1218 (1958); ABA Opinion 150 (1936). Participation by a private prosecutor does not obviate the need for a public prosecutor's presence, he being ultimately responsible for discretion regarding prosecution of alleged public law offenders. *State v. Atkins, supra.* If the government's prosecutor fails to perform his duties, he is answerable under W.Va. Const. art. IX, § 4 and art. IV, § 6. *State ex rel. Preissler v. Dostert, supra; State ex rel. Skinner v. Dostert, supra.*

■ Although a private prosecutor is held to the same high standards as a public one, the apparent conflict of interest and pressure of "wearing two hats" militates against permitting a party's private counsel to prosecute a criminal contempt charge stemming from a civil suit; and it makes no difference whether he acts as private lawyer or by appointment as special prosecutor. *See* Code of Professional Responsibility, W.Va.Code, App., EC–7–13, EC–5–1, EC–5–11, EC–5–14, EC–5–23; ABA Standards for Criminal Justice (2d Ed. 1980), Standard 3–2.1 and comments, p. 3.13.[3] A

2. Our 1966 decision in *State ex rel. Arnold v. Conley,* 151 W.Va. 584, 153 S.E.2d 681, 683, stated that a criminal contempt proceeding is not an actual criminal trial. To the extent that it discussed indirect criminal contempts, it was modified by implication in *Hendershot v. Hendershot, supra,* and is overruled here. The evolution of our law is clear. We have come to recognize that no less than full criminal protections are due process for indirect criminal contempt procedures.

3. ABA Standards for Criminal Justice, Standard 3–2.1, Commentary, pp. 3.12–3.13:

"The idea that the criminal law, unlike other branches of the law such as contracts and property, is designed to vindicate public rather than private interests is now firmly established. The participation of a responsible public officer in the decision to prosecute and in the prosecution of the charge gives greater assurance that the rights of the accused will be respected. Almost all prosecutions of a serious nature in this country now involve a professional prosecutor. The absence of a trained prosecution official risks abuse or casual and unauthorized administrative practices and dispositions that are not consonant with our traditions of justice.

"In a few jurisdictions a private party may institute criminal proceedings without the authorization or approval of the prosecuting attorney. When a check is not provided by the participation of a public prosecutor, however, there is danger of the vindictive use of the criminal law process. Standard 3–2.1 is designed to discourage the practice of police or private prosecution by the adoption of appropriate legislation to require the participation of a prosecutor in all criminal cases, except regulatory violations of a minor nature.

"Private prosecution, as described above, should be distinguished from the process avail-

trial judge may use his discretion about whether to permit a party's counsel to act as a private prosecutor to assist the government prosecutor. *State v. Atkins, supra.* We also note from *Atkins:* "[T]he role of a private prosecutor does not imply that he should be favored for selection as special prosecutor where the regular prosecutor is disqualified under W.Va.Code, 7-7-8." *Id.,* 163 W.Va. at 506-507, 261 S.E.2d at 59.

We are supported by decisions in other jurisdictions. *In re Lahm Industries, Inc.,* 609 F.2d 567, 569-70 (1st Cir.1979); *Ramos Colon v. United States Attorney for District of Puerto Rico,* 576 F.2d 1, 5 (1st Cir.1978); *Brotherhood of Locomotive Firemen and Enginemen v. United States,* 411 F.2d 312 (5th Cir.1969); *Kienle v. Jewel Tea Co.,* 222 F.2d 98, 100 (7th Cir.1955); *Harthun v. District Court for Second Judicial District,* 178 Colo. 118, 495 P.2d 539, 542 (1972); *Peterson v. Peterson,* 278 Minn. 275, 153 N.W.2d 825 (1967); *Leeman v. Vocelka,* 149 Neb. 702, 32 N.W.2d 274, 278 (1948). *See generally* Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev. 183 (1971).

We also recognize decisions that permit private counsel, with appointment by the court as special prosecutor, to prosecute a criminal contempt. *Musidor, B.V. v. Great American Screen,* 658 F.2d 60 (2d Cir. 1981), *cert. denied,* 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982); *United States v. Cunningham,* 599 F.2d 120 (6th Cir. 1979); *McCann v. New York Stock Exchange,* 80 F.2d 211 (2d Cir.1935), *cert. denied,* 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936) (court may appoint a party's attorney to prosecute a contempt if respondent is properly notified that it is a criminal action); *People v. Martin-Trigona,* 94 Ill. App.3d 519, 49 Ill.Dec. 743, 418 N.E.2d 763, 767 (1980), *reh. and U.S. cert. denied* (1981) (court may appoint a private litigant to prosecute contempt in a *direct* criminal contempt proceeding); *Department of Health v. Roselle,* 34 N.J. 331, 169 A.2d 153 (1961) (New Jersey has special statute authorizing a party other than a prosecutor to prosecute a contempt, R.R. 4:87-2(c); R.R. 3:8-2(c)).

Justice is better served by avoiding appearances of impropriety and of inherent conflicts of interest, presented when a private party's counsel in a civil suit is permitted to prosecute a criminal contempt against an opposing party. We agree with the Nebraska Supreme Court's language in *Leeman v. Vocelka, supra* 32 N.W.2d, at 278:

Without question the first part of the charge came clearly within the classification of a constructive criminal contempt, which could only be prosecuted in the name of the State and by information. Private litigants in such a situation have no right or authority to prosecute such actions, and thus intimidate and harass litigants and public officials under the pretext of preserving the power and vindicating the dignity of the court. We are not unmindful that the power of courts should be preserved and that the dignity of courts should be vindicated for the benefit of the public, but competent public officials and adequate proceedings are otherwise available for that purpose, which will also protect and preserve the fundamental rights and liberties of litigants which courts were created to protect. Viewed in that light, the first part of the charge of contempt falls of its own weight for want of any power or authority to prosecute the same.

In a factual context similar to ours here, involving a labor dispute and alleged contemptuous violations of an injunction, the Fifth Circuit stated:

As we look objectively at this record there is no doubt concerning the genesis of this due process deficiency. It flows directly from the fact that the governance of the whole criminal contempt proceeding was delivered into the hands

---

able in some jurisdictions whereby a private citizen may file a complaint if the prosecutor refuses to act. It is often argued that a private citizen should have this right if the prosecutor refuses to proceed. Against this view it is said

that efficient prosecution requires the participation of a trained prosecutor at the initial stage of decisions on prosecution." (Footnote omitted.)

of counsel for private parties, not the National Sovereign. This transcends the matter of competence, character and professional trustworthiness. Indeed, it is the highest claim on the most noble advocate which causes the problem—fidelity, unquestioned, continuing fidelity to the client. For while we would readily agree on this record that none of these distinguished counselors would have perverted a demand of the law in the prosecution of these respondents simply because it was detrimental to the interest of their railroad clients, the fact is that, continuing as they are in the related *merits*, case ... to the vigorous support of the Carriers' positions, they have a duty faithfully to assert every—the word is every—contention, refute every—the word is every—counter contention which they may legitimately and honorably do, which is disadvantageous to their carrier clients in this controversy. One such objective is to marshal and generate—through court orders if obtainable—pressures which will, or may, bring the Brotherhood earlier to book. To move fast, to get punitive orders which might put the Brotherhood in an awkward or disadvantageous position was therefore a desired goal on April 4. On the other hand, as prosecutors for the court,—i.e. the National Sovereign—there was an obligation to make sure that the respondents' rights were scrupulously preserved. No one would suggest now that in any way these fine lawyers submerged one interest over the other. But that is not the point. *The point is that those conflicting claims of undivided fidelity present subtle influences on the strongest and most noble of men. The system we prize cannot tolerate the unidentifiable influence of such appeals.* (Emphasis supplied.)

*Brotherhood of Locomotive Firemen and Enginemen v. United States, supra* 411 F.2d, at 319 (footnote omitted).

The Minnesota Supreme Court in *Peterson v. Peterson, supra,* held in Syllabus Point 2:

The prosecution of a constructive criminal contempt should not be conducted by the attorney for one of the parties in the proceedings out of which the contempt arose.

The *Peterson* court rested its decision on the nature of the offense and the proper parties:

As noted above, we have often stated that criminal contempts are offenses against the dignity of the state as a whole. We have held that criminal contempt is not a proceeding in the action out of which the alleged contempt arose, but is collateral to it, and the parties to the action out of which the alleged criminal contempt arose have no interest in it. See, *State v. Leftwich,* 41 Minn. 42, 42 N.W. 598. This being the case, the private attorney for one of the parties to the proceeding out of which the alleged contempt arose has no status which authorizes him to prosecute. The offense being against the state, due and orderly process is better assured if the prosecution is conducted by an attorney for the state.

*Id.,* 153 N.W.2d at 830.

*See also LaMere v. Young,* 291 Minn. 540, 192 N.W.2d 186 (1971).

 Cheek and Rhodes were denied due process of law when their criminal contempts were prosecuted by Koppers' lawyers.

Reversed and remanded.

NEELY, Justice, dissenting:

I am compelled to dissent from the majority's opinion. Although I enthusiastically agree with our previous holdings implementing the right of a criminal defendant to be represented by counsel, *State ex rel. Graves v. Daugherty,* 164 W.Va. 726, 266 S.E.2d 142 (1980), and assuring that he or she be effectively represented by counsel, *State ex rel. Rogers v. Casey,* 166 W.Va. 179, 273 S.E.2d 356 (1980), I do not believe that the *Constitution* requires, nor that common sense suggests, the result the majority appears today to have reached. Namely, that in a trial for criminal contempt, the accused has the right to be prosecuted by, if not incompetent, at least reluctant counsel.

The majority's entertaining characterization of the split of authority on this question has, I fear, left the wrong impression, one which I now must rectify. In addition to the decisions "recognized" by the majority as permitting the appointment of private counsel, I am also aware of similar decisions in a number of other courts. I shall begin with the Federal Circuits. The First Circuit, *MacNeil v. U.S.*, 236 F.2d 149 (1956), *cert. denied*, 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119 (1956); the Fourth Circuit, *In re Fletcher*, 216 F.2d 915 (1954), *cert. denied*, 348 U.S. 931, 75 S.Ct. 347, 99 L.Ed. 730 (1955); the Ninth Circuit, *Western Fruit Growers v. Gotfried*, 136 F.2d 98 (1943); and the Tenth Circuit, *Frank v. U.S.*, 384 F.2d 276 (1967), all join the Second Circuit in countenancing the prosecution of criminal contempts by attorneys other than the federal prosecutors.

The astute reader is unsurprised by the opinions of these circuits, for he is familiar with *Fed.R.Crim.P.*, 42(b), providing that "notice [of criminal contempt] shall be given ..., on application of ... an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest." And, as commentators have realistically observed, "[s]ince the person most likely to call the contempt to the court's attention is counsel of the aggrieved party, the court is likely to appoint said counsel to prosecute the criminal action." G.K. Wright, et al. "Civil and Criminal Contempt in Federal Courts," 17 F.R.D. 167, 172 (1955).

As for state courts, I would add (alphabetically) the voices of the courts of Georgia, *Welborn v. Mize*, 107 Ga.App. 427, 130 S.E.2d 623 (1963); Iowa, *State v. Rudolph*, 240 Iowa 726, 37 N.W.2d 483 (1949); Massachusetts, *Katz v. Commonwealth*, 379 Mass. 305, 399 N.E.2d 1055 (1979); Mississippi, *Melvin v. State*, 210 Miss. 132, 48 So.2d 856 (1950); Missouri, *Popsicle Corporation v. Pearlstein*, 168 S.W.2d 105 (Mo.App.1943); Oregon, *State ex rel. Johnson v. Schwartz*, 23 Or.App. 270, 542 P.2d 153 (1975); and Wisconsin, *Wisconsin Employment Relations Bd. v. Allis-Chalmers Workers' Union, Local 248*, 249 Wis. 590, 25 N.W.2d 425 (1946), to the chorus of support for the proposition that criminal contempts need not be prosecuted by state prosecuting attorneys. The authority supporting my dissent, therefore, does not, as the majority opinion might indicate, merely amount to a desultory barbershop quartet, but rather to a full choir, led by one of our greatest soloists, Judge Learned Hand.

This chorus is not mere sound and fury, either. On the contrary, it signifies an intelligent and realistic concern. Judge Learned Hand noted in his famous opinion in the case of *McCann v. New York Stock Exchange*, 80 F.2d 211 (2d Cir.1935), *cert. denied sub nom. McCann v. Leibell*, 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936), (an opinion, by the way, the eminent wisdom of which prompted the adoption of Rule 42(b), *supra*) that in the prosecution of a criminal contempt committed outside the presence of the court "the judge may prefer to use the attorney of a party, who will indeed ordinarily be his only means of information.... There is no reason why he should not do so, and every reason why he should...." *Id.*, at 214. A number of such reasons are put forth in *Musidor, B.V. v. Great American Screen*, 658 F.2d 60 (2d Cir.1981):

> The practicalities of the situation—when the criminal contempt occurs outside the presence of the court but in civil litigation—require that the court be permitted to appoint counsel for the opposing party to prosecute the contempt. There is no fund out of which to pay other counsel in such an event, nor would it be proper that he be paid by the opposing party. This is not the kind of case for which legal aid societies or public defenders are available.

Other such reasons are readily apparent, the most compelling of which is the political nature of the elected county prosecuting attorney. It is very possible that a case could appear which, if prosecuted, would result in the premature termination of the prosecutor's career at the following election. The power of a court to appoint other attorneys to prosecute unpopular criminal contempt actions relieves county prosecutors of having to face a difficult

choice between their duty and their career. The same power also reassures those against whom the criminal contempt has been perpetrated that, even should the prosecutor opt for the preservation of his or her career, their rights may still be protected.

The danger of vexatious litigation to which the majority alludes is qualified by the nature of the procedure involved. A judge must first determine that an injunction is required and enter an order granting such relief. Only when that judicial judgment is ignored, and the order violated, does an action for criminal contempt arise, and then the parties must go back before a judge and, if requested, a jury, who determine whether the acts objected to were in fact committed, and whether the commission of those acts amounts to a violation of the court's order sufficient to constitute criminal contempt. To my mind, that "judicial sandwich" around the private attorney's information is a substantial protection of the accused contemnor from malicious prosecution.

The majority opinion makes a certain theoretical sense; we all want objectivity in the prosecution of any criminal matter. Applied theoretical perfection, however, diminishes in value in direct proportion to the imperfection it encounters in the real world, and we live in an imperfect world. We live in a world, for instance, of underfunded county prosecutors. We live in a world where elected politics is determined by numerosity, and in a public disturbance numerosity is likely to be on the side of the contemnors. Most importantly, we live in a world where courts have to provide impartial supervision over labor conflicts.

Access to the courts, and to the consciously weighted balance struck by the legal system, is the preeminent aspect of national and state policy with respect to labor disputes. The prospect of court intervention, and an abiding conviction among the parties of the impartiality of courts, are the elements which defuse potentially explosive labor disputes. It is, therefore, vital that access to the courts remain open. It is both dangerous and politically naive to eliminate avenues of access to the courts, and particularly so to leave as the only channel an institution both ineffective because of its lack of resources and susceptible of political intimidation. The system allowing private prosecution may not have been perfect, but it took into account the imperfections of our world, and provided a far superior result than the rule today mandated by the majority will achieve.

Finally, just as Moliere's "Bourgeois Gentilhomme" had to be told that he was speaking prose, the majority apparently needs to be reminded that it is writing law, and not merely rendering *ad hoc* decisions. The unconditional nature of the majority position fails to take into account the full spectrum of circumstances that might call for prosecution by a private attorney. Outside the area of labor disputes there are countless occasions when it is necessary to enforce a court's injunction order with a criminal contempt action. Since such enforcement is ancillary to the adjudication of a private civil dispute, why should we burden the public treasury with the costs of securing enforcement? More to the point, why should civil litigants be left at the mercy of a publicly elected official if he or she is not interested in vindicating their rights? Courts are not only called on to secure the enforcement of injunctions against labor unions. Under the majority's rule state courts are now as powerless to secure the enforcement of, for instance, a school integration order in the face of widespread political opposition, as they are to protect the property of employers.

The majority's holding exemplifies the converse of the ancient dictum that hard cases make bad law. Here, too easy a case has made bad law.