McDANIEL *v.* McDANIEL

[No. 178, September Term, 1969.]

*Decided February 10, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Thomas L. Hennessey* for appellant.

*A. Frederick Taylor* for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

The extraordinary thing about this case is the number of judicial and professional man-hours it has consumed, to so little purpose. Five years ago the appellee (Christine) sued the appellant (McDaniel) for a divorce a mensa and the usual ancillary relief. McDaniel responded with a cross-bill for a divorce a vinculo. A year and a half later, 6 July 1966, the parties were divorced a vinculo but McDaniel was ordered by Judge Turnbull to pay $30 per week, through the probation department of the Circuit Court for Baltimore County, for the support of three infant children.

Within 90 days Christine was back in court asking to have him cited for contempt because he was already $210 in arrears. On 7 December 1966 Judge Proctor, after a hearing, dismissed the contempt citation and ordered him to pay the $30 per week plus five dollars per week on account of the arrears, which by that time were $270.

A month later Christine again sought a citation for contempt, the amount in arrears being $390. When McDaniel was returned "non est" another petition was filed; the arrears had risen to $540. This was also returned "non est." On 18 April the probation department filed a petition for attachment for contempt. Judge Haile, after a hearing, dismissed "the charge." The docket entry states that the "$30 per week still stands." On 26 July 1967 Christine again filed a petition for attachment for contempt; the arrears were then $978. McDaniel's present attorney entered his appearance on 21 September. After a hearing on 6 October Judge Proctor found him guilty of contempt, sentenced him to six months in jail, suspended the sentence, placed him on probation and ordered him to pay $10 per week on account of the arrears and to maintain the weekly payments of $30.

On 7 March 1968 Christine filed another petition to have him attached for contempt. The arrears at that time were $1,438. On 20 September Judge Jenifer, after a hearing, dismissed Christine's petition on condition that McDaniel pay $300 immediately and continue the regular payments of $30 per week "pending action by the court on [a] petition for reduction to be filed." McDaniel paid the $300 and on 16 October he filed a petition for the modification of the support order, claiming illness, physical inability to work and the emancipation of the oldest child. Christine resisted and submitted interrogatories. In March 1969 Christine filed another petition for attachment; the arrears were alleged to be $1,983. The case came on for a hearing before Judge Maguire on 28 April 1969. Both parties and a representative of the probation department appeared and testified. Judge Maguire commented on McDaniel's earlier appearances before other judges of the court and the inefficacy of their attempts to resolve the problem. He sentenced McDaniel to be confined for a period of one year in the Baltimore County Jail. Additionally he ordered the warden to place McDaniel on a "work-release" program pursuant to the provisions of Code, Art. 27, §§ 645 K—S (1967 Repl.

Vol.). He directed his earnings to be disbursed weekly as
follows:

> $ 7.00—McDaniel's board at jail.
>   30.00—To Christine for the children.
>   15.00—Personal and incidental expenses of
>       McDaniel.
>   10.00—On account of arrears.
> Any unexpended balance to be held for the
> account of McDaniel and paid to him upon
> his discharge.

## I.

McDaniel insists that Judge Maguire had no authority
to order him confined for a fixed term since he was found
guilty of a civil contempt. Although we do not agree that
the imposition of a fixed sentence in a case like this is
per se improper, we think the order should be modified.

The distinction between civil and criminal contempt [1]
has not escaped us. In *Donner v. Calvert Distillers Corp.*,
196 Md. 475 (1950), *noted in* 12 Md. L. Rev. 241 (1951),
Chief Judge Marbury quoted from the opinion of Mr.
Justice Lamar in *Gompers v. Bucks Stove & Range Co.*,
221 U. S. 418 (1911):

> " 'It is not the fact of punishment but rather
> its character and purpose that often serve to
> distinguish between the two classes of cases. If
> it is for civil contempt the punishment is re-
> medial, and for the benefit of the complainant.
> But if it is for criminal contempt the sentence
> is punitive, to vindicate the authority of the
> court. It is true that punishment by imprison-
> ment may be remedial, as well as punitive, and
> many civil contempt proceedings have resulted
> not only in the imposition of a fine, payable to
> the complainant, but also in committing the de-
> fendant to prison. But imprisonment for civil

---

1. An excellent analysis of the law of contempt with proposals
for its modification is presented by R. Goldfarb, *The Contempt
Power* (1963).

contempt is ordered where the defendant has re-
fused to do an affirmative act required by the
provisions of an order which, either in form or
substance, was mandatory in its character. Im-
prisonment in such cases is inflicted not as
punishment, but is intended to be remedial by
coercing the defendant to do what he had re-
fused to do. *The decree in such cases is that the
defendant stand committed unless and until he
performs the affirmative act required by the
court's order.'* " *Id.* at 484-85 (emphasis added).

More recently, in *Winter v. Crowley,* 245 Md. 313 (1967),
we indicated that Mrs. Winter's refusal to comply with
an order directing the delivery of the custody of her
children to Crowley resulted in a civil contempt. In addi-
tion to quoting with approval the Supreme Court's dis-
tinction in *Gompers,* Judge Barnes adopted a delineation
by the Supreme Court of Pennsylvania in respect of the
factors which generally point to a civil contempt; for the
Court, he said:

"* * * (1) the complainant is usually a private
person as opposed to the State; (2) the con-
tempt proceeding is entitled in the original ac-
tion and filed as a continuation thereof as op-
posed to a separate and independent action; (3)
holding the defendant in contempt affords re-
lief to a private party; (4) the relief requested
is primarily for the benefit of the complainant;
(5) the acts complained of do not of them-
selves constitute crimes or conduct by the de-
fendant so wilful or contumelious that the court
is impelled to act on its own motion. *Knaus v.
Knaus,* 387 Pa. 370, 127 A. 2d 669 (1956)
* * *." *Id.* at 317.

Applying Judge Barnes' analysis, McDaniel's characteri-
zation of Judge Maguire's contempt finding as "civil"
rather than "criminal" would seem to be correct. And

one might observe that the conclusion herein reached in respect of the nature of contempt proceedings to enforce payment of support money appears to be in accord with the "great weight of authority." *See, e.g.,* 2 W. Nelson, *Divorce and Annulment* § 16.06 (2d ed. 1961).

As earlier noted, imprisonment for civil contempt is " 'inflicted not as punishment, but is intended to be remedial by coercing the defendant to do what he has refused to do.' " *Donner, supra* (quoting from *Gompers, supra*). It would seem to follow then, that "[i]mprisonment cannot be considered coercive unless the contemnor is kept in prison only until he complies with the relevant court order." [2] Comment, *The Coercive Function of Civil Contempt,* 33 U. Chi. L. Rev. 120, 130 (1965). For this reason the authorities are in almost unanimous agreement that the imposition of a fixed term of imprisonment for civil contempt is improper where the contemnor is given no opportunity to purge himself of the contempt. *See Allen v. Smith,* 237 A. 2d 354 (Vt. 1967); *Knaus v. Knaus, supra* at 674; *Duell v. Duell,* 178 F. 2d 683 (D.C. Cir. 1949); *Sullivan v. Sullivan,* 23 Tenn. App. 644, 137 S.W.2d 306 (1939); *Brown v. Brown,* 205 Ind. 664, 187 N.E. 836 (1933); 17 Am.Jur.2d, *Contempt* § 111 (1964); 17 C.J.S., *Contempt* § 93 (1963); 2 W. Nelson, *supra* at § 16.20; and Beale, Jr., *Contempt of Court, Criminal and Civil,* 21 Harv. L. Rev. 161, 174 (1908). The law of Maryland seems to be generally in accord. Maryland Rule 636 provides:

> "Where a person shall be in contempt for disobedience, nonperformance or nonobservance of any process, rule or order of a court, or for any matter, whereby a contempt may be incurred, such person shall, for every such contempt, and before he shall be released or discharged from

---

2. Inasmuch as those imprisoned in civil contempt cases are usually released upon compliance with the court's decree, it has been stated in an oft cited case that "[t]hey carry the keys of their prison in their own pockets." *In re Nevitt,* 117 F. 448, 461 (8th Cir. 1902).

the same, pay to the clerk of the court * * * such sum as the court may fix, as a fine for the purgation of every such contempt. The person being in court upon any process of contempt or otherwise, upon the order of the court, *shall stand committed and remain in close custody until the said process, rule, or order shall be fully performed, obeyed and fulfilled,* and until the said fine for such contempt, and the costs, shall be fully paid." (Emphasis added.)

To the same effect is Rule 685 (c). *See Johnson v. Johnson,* 241 Md. 416 (1966), and the cases therein cited.

Christine contends that the punishment imposed by the court below is warranted under the decisions of this Court and she cites *Freedman v. State,* 176 Md. 511 (1939); *Ex parte Bowles,* 164 Md. 318 (1933); *Ex parte Sturm,* 152 Md. 114 (1927); and *Skirven v. Skirven,* 154 Md. 267 (1928). The first three cases, however, are inapplicable since they involve the validity of an order for criminal contempt. Although a fixed sentence (ten days) for civil contempt was involved, the last case is also inapplicable since the validity of the sentence was not questioned.

It would seem, therefore, that the punishment imposed by Judge Maguire is not entirely correct because his order does not provide for McDaniel's release in the event the arrearage is paid prior to the expiration of the one year term. It must not be supposed, however, that the imposition of a fixed term of imprisonment for civil contempt is invalid per se, or that in appropriate circumstances the court could not make a specific finding of criminal contempt and sentence a husband to a fixed term for wilfully and contumaciously flouting the order of the court. In ordinary circumstances, of course, a determinate sentence may be imposed provided the order of the trial judge allows the contemnor to be released if compliance is accomplished prior to the end of his term. As the author of a Comment in the Chicago Law Review put it:

"* * * no objection can be raised to the imposition of a determinate sentence if the contemnor is given the right to purge himself of the contempt. In such a case, if the contemnor retains the same defenses which would have been available to him had the commitment order been couched in terms of 'confinement until compliance,' the court has simply limited the potential term of imprisonment. To that, the contemnor certainly cannot object." Comment, *The Coercive Nature of Civil Contempt*, 33 U. Chi. L. Rev. 120, 130 (1965).

We shall remand the case so that the order can be modified to conform to the views expressed above.

## II.

McDaniel assigns error because the court failed to rule on his "Petition for Modification and Reduction of Support and Maintenance" prior to the disposition of the petition to have him adjudged in contempt. The petition, filed 16 October 1968, prays "[t]hat the present support Order be reduced from Thirty ($30.00) Dollars per week for the three (3) children to a sufficient amount for the two (2) children in Mrs. McDaniel's care and control, dating from July 1, 1966, and a new amount be established." On 31 October the petition was answered and interrogatories were filed. Because the interrogatories were still unanswered on 5 February 1969 Christine filed a "Motion to Dismiss" the petition and McDaniel was ordered to "show cause" by 25 February. On 24 February he answered the motion and filed his answers to the interrogatories.

We think Code, Art. 26, § 5 (1966 Repl. Vol.) is dispositive of McDaniel's contention. It provides as follows:

"Any person who has been adjudged guilty of contempt for failure to pay any monetary amount or amounts specified in a decree or order in a civil proceeding shall not even though

such contempt has not been purged or removed, be thereafter barred solely by reason of the fact of such adjudication of contempt from filing a petition for modification of the decree or order or for any other relief; nor, from being heard on said petition after it has been answered or is otherwise at issue and ready for trial in accordance with the practice in the court wherein the proceeding is pending. *Any such petition which has been filed prior to actual adjudication of contempt, whether before or after issuance of a show-cause citation therefor, may, in the discretion of the court, be consolidated and heard with said citation for contempt;* provided said petition has been answered or is otherwise at issue and ready for trial in accordance with the practice in the court wherein the proceeding is pending." (Emphasis added.)

It is clear that Judge Maguire's determination not to hear McDaniel's petition prior to or together with Christine's motion was entirely discretionary. And under the circumstances we do not think there was an abuse of discretion. Furthermore, we think it is clear that a hearing on McDaniel's petition may still be held. *See Kandel v. State,* 252 Md. 668, 672 (1969).

### III.

McDaniel further contends that the contempt order should not have been issued because he was unable to comply with it. It seems to be well settled "that one charged with contempt may avoid imprisonment by showing he has neither the money nor the ability to pay." *Speckler v. Speckler,* 256 Md. 635 (1970); *see Johnson v. Johnson,* 241 Md. 416 (1966) and the cases therein cited. It also appears that the alleged contemnor "* * * has the burden of showing his inability to comply and that his situation is in good faith and not due to calculated and deliberate choice." 2 W. Nelson, *supra* § 16.25 a

at 440; *see* 17 Am.Jur.2d, *Contempt* § 51 (1964); and 17 C.J.S., *Contempt* § 19 (1963).

The factors bearing upon one's ability to comply were discussed recently by the Supreme Court of Minnesota in *Hopp v. Hopp*, 279 Minn. 170, 156 N.W.2d 212 (1968). Quoting from *State ex rel. Houtchens v. District Court*, 122 Mont. 76, 82, 199 P. 2d 272, 275 (1948), the Minnesota court said:

> " 'Lack of ability to support one's wife and dependent offspring must not be confused with lack of will to discharge such legal, moral and social obligation. Little sympathy can be had for a husband and father who willfully fails and refuses to support his family. The husband is not relieved of liability to comply with the court's orders in that behalf merely because he has no property or because he is not gainfully employed. His ability to perform labor; his opportunity to find gainful employment; his disposition and will to earn money and contribute a reasonable amount to his family's support, and his diligence in seeking employment that will yield, at the very least, sufficient wages to provide for himself and dependents the necessaries of life should also be considered.' " *Id.* 156 N.W.2d at 217-18.

The Minnesota court also quoted from 2 W. Nelson, *supra* § 16.25 at 435-436:

> " 'Various factors may bear upon ability to comply. The question is not merely one of the amount of cash which the husband has on hand. [He may have borrowing capacity against nonliquid assets which it is fair to compel him to exercise. How about property which he owns, but which would ordinarily be exempt from execution?] He cannot be compelled to work and earn the wherewithal to meet the court's man-

date if he is physically or for other good reason unable to do so. On the other hand, he will not be permitted to succeed on a defense of inability to comply where he has chosen his own situation and declines to make any reasonable effort to employ his earning capacity in other directions. Nor can he arbitrarily sit back and refuse to work when he has the capacity for gainful employment.' " *Id.* 156 N.W.2d at 218.

Applying these observations to the case at bar we are unable to conclude that Judge Maguire was clearly in error in respect of McDaniel's ability to comply. There was no showing that McDaniel was without the ability, at the time of the hearing, to "perform labor" or be "gainfully employed." He testified he was "forty years old." Until December 1968 he had been employed for seventeen years by the Patapsco and Back River Railroad and earned (according to a Master's Report included in the record) approximately $75—$80 per week net. He said that he quit the railroad job in December and that he was employed on 2 January 1969 as an apprentice meat cutter by Giant Food, earning a net wage of $74 per week. Thirty days later he was given the higher journeyman rate. However, on 5 February he was forced to take an extended leave of absence in order to recover from smoke inhalation suffered while performing as a volunteer fireman. At the time of the hearing (28 April) he indicated that he had been temporarily employed since 1 April by a construction company and that he expected to be reemployed by Giant. He further testified that he expected to recover about $1,000 "in insurance money" as compensation for the injury sustained while acting as a fireman. Additionally, he indicated that he had suffered from an "emotional instability" and that he had been treated by a physician. Reference was also made to other illnesses; however, we think it is significant that no attempt was made to document the alleged physical incapacity to work.

The record also raises a question as to whether McDaniel proved that a "good faith" effort to comply with the support decree had been made. His promises of payment made at the four previous hearings and his subsequent failure to keep those promises, we think, speak for themselves. Also, an employee of the Baltimore County Probation Department testified that McDaniel had to be prodded "since 1966 to date" by approximately "fifteen to twenty letters" from his department, a figure which he estimated almost equalled the "payments received in this case."

Compliance with Judge Maguire's order may be inconvenient, it may be difficult, it may even result in hardship, but we do not think he has met the burden of proving his inability to comply.

> *Remanded for modification conformable with the views expressed in this opinion, and as modified affirmed. Costs to be paid by the appellant.*