FRANK FLOYD, *et al.*,

*v.*

BILLY J. WATSON, *et al.*

(No. 13804)

Decided May 15, 1979.

---

66

*E. Dennis White, Jr., Bernard T. Nibert, II* for appellants.

*George L. Partain* for appellees.

HARSHBARGER, JUSTICE:

Frank and Jo Ann Floyd entered into a contract with Billy J. and Nola Watson whereby the Watsons agreed to sell real property to the Floyds and construct a house and appurtenances upon the property according to specifications attached to the agreement.

The Watsons built the house and deeded property to the Floyds, but failed to build a wall as specified. They completed part of it, some on property they still owned, but to finish it would have had to extend it further upon their property.

The Floyds brought suit to force completion of the wall and conveyance to them of the property upon which it would be located.

Prior to trial, the parties agreed that the Watsons would complete the wall and make the appropriate deed, but they failed to build the wall according to this agreement.

The Floyds then brought a second suit seeking specific performance of the settlement agreement and the court

granted it. The order designated the location of the wall and required the Watsons to complete construction and to deed to the Floyds the requisite property.[1]

The Watsons did not comply with the order, and when they were cited for contempt they requested a jury trial on the contempt and their potential punishment for it. Both requests were denied. After hearing, the court found them guilty of contempt, ordered them to purge themselves by building the wall and provided for a grad-

---

[1]The Court's order was: "At the pre-trial conference which was scheduled and held in this case on July 12, 1976, the defendants requested the court to rule on that aspect of the plaintiff's complaint that asked for specific performance of the agreement reached at the pre-trial conference held in Civil Action No. 8355 and based upon the testimony of the attorneys George L. Partain and Paul E. Bottome, taken by deposition and the court's own personal knowledge as to what transpired at the pre-trial conference held on March 6, 1975, that being that the court recalls that an offer of compromise was suggested by the defendant's attorney, Paul Bottome, who left the pre-trial conference room and returned and advised the court that he had conferred with the defendant Billy J. Watson, who was in the room outside the pre-trial conference hearing room, and that the defendants offered to settle the case on the basis that the defendant Billy J. Watson would tender the plaintiffs a deed for the property on which the front wall was sitting and would continue the wall along the diagonal portion of the plaintiff's property, S 32° 26' W 36.88 feet, tieing the same into the existing wall where the tie-in openings had been provided so that the wall is identical in all respects to the existing wall and that the defendants would furnish to plaintiffs a deed to any property owned by the defendants if any portion of said wall had to be erected on the defendants' property; and it further affirmatively appearing to the court that this offer was accepted by the plaintiffs on March 13, 1975, and that therefore a binding agreement was reached, it is accordingly

ORDERED that the plaintiffs are entitled to specific performance of said compromise agreement and the defendant Billy J. Watson is ORDERED to forthwith construct the wall in accordance with said agreement and to deliver to said plaintiffs a deed to any property which they own and on which said wall must be placed.

Dated this 19 day of July, 1976.

ENTER:
S/ Harvey Oakley
Judge"

uated fine to increase in amount as long as they failed to commence work.

About 25 days later, a second hearing was held. The Watsons, who had disobeyed the order, were again found in contempt and were fined and sentenced to 70 days in jail. A stay of execution was granted pending appeal to this Court.

Four trial court errors are assigned: (1) refusal to dismiss the second action while the first was pending; (2) denying petitioners a jury trial on the specific performance aspect of the case; (3) specifically enforcing a compromise agreement which was incomplete, uncertain and impossible to perform; and (4), specifically enforcing a compromise agreement for personal services.

The first assignment of error is meritless. The court held the second action in abeyance until it was determined that in fact a valid settlement agreement had been reached. Then the first suit was dismissed and the court proceeded with the second.

The second assignment of error is also without merit. The record reveals from the court's order entered on July 19, 1976, that at a pre-trial conference held July 12, 1976, the appellants requested the court to rule on the issue of specific performance of the previously reached compromise agreement. It did so, and appellants cannot now be heard to complain that they were denied a jury trial that they did not ask for.

The third assignment fails because the court's order dated July 19, 1976, appears to us to be complete, definite, certain and possible to perform.[2]

The final assignment deals with specific performance of the agreement. The general rule is that a compromise or settlement agreement is favored by law and is to be construed as any other contract. *See, Penn Dixie Lines, Inc., v. Grannick,* 238 N.C. 552, 78 S.E.2d 410 (1953);

---

[2]*See* n. 1, *supra.*

*Wright v. Davis*, 132 W. Va. 722, 53 S.E.2d 335 (1949); *Janney v. Virginian Railroad*, 119 W. Va. 249, 193 S.E. 187 (1937); and *Maze v. Bennett*, 114 W. Va. 169, 171 S.E. 249 (1933). Specific performance is available to enforce a compromise agreement, assuming other requisites for this remedy are met. 48 A.L.R. 2d 1211.

Specific performance is not ordinarily decreed of construction contracts because an adequate remedy for damages exists and because of the impracticality of courts supervising contracted work. This rule is not absolute, but one of discretion, and where the particulars of the work are definitely ascertained, plaintiff has a substantial interest in having the contract performed, and money damages will not provide an adequate remedy, courts will order specific performance. *See, Brown v. Western Maryland Railroad*, 84 W. Va. 271, 99 S.E. 457 (1919), where this Court decreed specific performance of a contract by a railroad company to build or maintain side tracks, extensions or branch lines. *See also*, 4 A.L.R. 529 and cases cited therein.

In *Wilhelm v. Denton*, 82 Mich. App. 453, 266 N.W.2d 845 (1978), the Michigan Court of Appeals reversed a trial court's order denying the vendor of real property specific performance because an adequate remedy at law existed.

> The grant of specific performance is within the discretion of the trial court and cannot be demanded as a matter of right. However, when the subject of the contract is the sale of land, specific performance may not be arbitrarily refused, and in the exercise of sound judicial discretion should be granted, in the absence of some showing that to do so would be inequitable. [Citations omitted] [82 Mich. App. 455 at 266 N.W.2d 846]

*See also, Hausam v. Woodrich*, 574 P.2d 805, 809 (Alaska 1978).

The agreement here includes a provision for conveyance of land, and therefore specific performance is proper.

> Specific performance is an equitable remedy which compels the performance of a contract on the precise terms agreed upon or such a substantial performance as will do justice between the parties under the circumstances. It is a means of compelling a contracting party to do precisely what he should have done without being coerced by a court. [Citations omitted] The object in such cases is to place the party without fault in as nearly the same position as he would have been had there been no default by the other party. [*McCoy Farms, Inc., v. J & M McKee,* Ark., 563 S.W.2d 409, 415 (1978)]

Although not raised by appellants, the propriety of the jail sentence imposed for their contempt must be examined. When the Watsons refused to obey the court order, they may have been guilty of both civil and criminal contempt because there is no clear line of delineation between the two and contempts need not be wholly civil nor altogether criminal. *Hendershot v. Handlan,* W. Va., 248 S.E.2d 273 (1978).[3] *See also, Jencks v. Goforth,* 57 N.M. 627, 261 P.2d 655 (1953). Civil and criminal contempts can be distinguished by looking to the purpose for which the contempt order was issued.[4] "[C]ivil contempt proceedings do not seek to punish the defendant, but rather to benefit the complainant: the remedial

---

[3]As stated by Chief Justice Caplan in *Hendershot:*

Contempt may be civil or criminal. Where the primary purpose is to preserve the court's authority and to punish for disobedience of its orders, the contempt is criminal. Where the primary purpose is to provide a remedy for an injured suitor and to coerce compliance with an order the contempt is civil. The same act may constitute both civil and criminal contempt and contempts may be neither wholly civil nor altogether criminal but may partake of characteristics of both. *State ex rel. Arnold v. Conley,* 151 W. Va. 584, 153 S.E.2d 681 (1966). [248 S.E.2d 275]

[4]The Maryland Court of Appeals applied another analysis which was originally used by the Supreme Court of Pennsylvania, setting forth factors which generally point to a civil contempt:

measures applied are either compensatory or coercive; compensatory measures benefit the complainant directly, while coercive measures influence the defendant to act in a way that will ultimately benefit the moving party." [Footnotes omitted] Comment, *The Coercive Function of Civil Contempt*, 33 U. Chi. L. Rev. 120 at 123, 124 (1965). The purpose for punishing for criminal contempt, hwoever, is the vindication of public authority. *Curtis v. Tozer*, Mo. App., 374 S.W.2d 557 (1964).

The distinction between the two contempts was stated by Justice Lamar in *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 55 L. Ed. 797, 31 S. Ct. 492 (1911):

> It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. *But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not in*

---

" ' * * * (1) the complainant is usually a private person as opposed to the State; (2) the contempt proceeding is entitled in the original action and filed as a continuation thereof as opposed to a separate and independent action; (3) holding the defendant in contempt affords relief to a private party; (4) the relief requested is primarily for the benefit of the complainant; (5) the acts complained of do not of themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is impelled to act on its own motion. Knaus v. Knaus, 387 Pa. 370, 127 A.2d 669 (1956) * * *.' " [*McDaniel v. McDaniel*, 256 Md. 684, 262 A.2d 52, 55 (1970)]

*flicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order.* [Emphasis added] [221 U.S. 441, 442]

Because the purpose of the court's order was to provide a remedy to the complainants, Frank and Jo Ann Floyd, and to coerce compliance with the court's affirmative order, we find that the contempt here is civil.[5]

---

[5]This is not to say that criminal contempt could not apply. Justice Neely wrote in *Eastern Associated Coal Corp. v. Doe*, W. Va., 220 S.E.2d 672 (1975), that when a husband ignores a court order to pay alimony he may be in civil contempt, but depending on how the order was disobeyed, could also be criminally contemptuous.

However, the same husband can convert his civil contempt into criminal contempt by being disrespectful, abusive, or contumacious toward the court, in which case the court may incarcerate him for a definite period regardless of his future willingness to comply with the court order. [220 S.E.2d at 681]

Regardless of the type of contempt, summary punishment is proper in certain instances. Although a court may impanel a jury to set the proper fine or imprisonment, it is not mandatory that the court do so in every case.

*W. Va. Code*, 61-5-26 provides:

The courts and the judges thereof may issue attachment for contempt and punish them summarily only in the following cases: (a) Misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice; (b) voilence or threats of violence to a judge or officer of the court, or to a juror, witness, or party going to, attending or returning from court, for or in respect of any act or proceeding had, or to be had, in such court; (c) misbehavior of an officer of the court, in his official character; (d) *disobedience to or resistance of any officer of the court, juror, witness, or other person, to any lawful process, judgment, decree or order of said court.* No court shall, without a jury, for any such contempt as is mentioned in subdivision (a) of this section, impose a fine exceeding fifty dollars, or imprison more than ten days. But in

The Watsons were notified that if they did not obey the court's order they would be in contempt and after notice a recorded hearing was held wherein they were represented by counsel, to determine whether they were guilty. They had all the procedural safeguards set out by Justice Miller in his concurrence to *Hendershot,* including adequate notice and reasonable opportunity to be heard, assistance of counsel, a record of the proceedings, and application of the criminal rules of evidence. Thus, there was nothing procedurally deficient in the contempt hearing.

However the punishment imposed, which was a fine and 70 day jail sentence, was inappropriate.

"[T]he most important result of the distinction between civil and criminal contempt is the rule that if a contempt procedure is criminal in nature, the sentence must be a determinate one, while if it is civil in nature, the sentence must be coercive." *See,* Dobbs, *Contempt of Court: A Survey,* 56 Cornell L. Rev. 183, 243 (1971). "For this reason the authorities are in almost unanimous agreement that the imposition of a fixed term of imprisonment for civil contempt is improper where the contemnor is given no opportunity to purge himself of the contempt." *McDaniel v. McDaniel,* 256 Md. 684 at 689, 262 A.2d 52 at 55. Although definite sentences in civil contempt cases have been upheld,[6] we decline to join those few courts who have done so. For civil contempt, the penalty must coerce, not punish. The imposition of a

---

any such case the court *may* impanel a jury (without an indictment or any formal pleading) to ascertain the fine or imprisonment proper to be inflicted, and *may* give judgment according to the verdict. No court shall impose a fine for contempt, unless the defendant be present in court, or shall have been served with a rule of the court to show cause, on some certain day, and shall have failed to appear and show cause. [Emphasis added]

[6]*See, Dahl v. Dahl,* 210 Minn. 361, 298 N.W. 361 (1941) and *Jencks v. Goforth,* 57 N.M. 627, 261 P.2d 655 (1953) (suspended definite sentence).

definite jail sentence simply punishes. Imprisonment may be for a definite term only if the order allows the contemnor to be released from jail as soon as he or she complies with the order. *McDaniel v. McDaniel, supra.* Inasmuch as there was no such provision in the court's order here, the 70 day sentence allowing no opportunity for the parties to purge themselves, cannot stand.

We affirm the trial court in every respect, except his choice of penalty for the contempt exhibited by the Watsons. We sustain his imposition of fines but set aside the jail sentence.

*Affirmed as modified.*