650 A.2d 1376

**John Jeffrey CAMERON**

v.

**STATE of Maryland.**

**Nos. 325, 497, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Dec. 29, 1994.

602

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Lawrence V. Kelly, State's Atty. for Allegany County, Cumberland, on the brief), for appellee.

Argued before ALPERT, HARRELL and HOLLANDER, JJ.

ALPERT, Judge.

■ Lest we be misunderstood by our ultimate holding, we declare at the outset that an intoxicated litigant who disrupts the proceedings of the court by contumacious or stupefied conduct may be held in contempt of court.

■ Appellant, John Jeffrey Cameron, appeals two judgments entered by the Circuit Court for Allegany County, the first finding him in contempt for appearing in court in an

intoxicated condition and the second denying his motion to dismiss on the basis of double jeopardy. Appellant asks:

I. Did the trial court err in finding him in contempt of court?

II. Did the trial court err in striking the judgment based on a guilty plea?

III. Did the trial court err in permitting evidence of a chemical test in a criminal contempt proceeding?

IV. Did the trial court err in denying his motion to dismiss based on double jeopardy?

We answer numbers I, II, and IV in the affirmative and therefore reverse; we need not address issue III.

### Facts and Proceedings

On July 16, 1993, appellant, John Jeffrey Cameron, was stopped by Department of Natural Resources officers and charged by citation with driving while intoxicated, a charge subsequently amended to include a charge of driving under the influence. On or about December 20, 1993, appellant appeared before the Circuit Court for Allegany County, at which time he was found to be in an apparently intoxicated condition. At that time, the court ordered appellant to be held without bond pending a determination of whether detoxification was necessary, and the next day, the court ordered that Cameron be released from the sheriff's custody on his own recognizance pending completion of his alcohol treatment. Appellant was then subpoenaed to appear in court on March 16, 1994, at 9 a.m.

On March 16, appellant returned to court as scheduled and, pursuant to a plea agreement, entered a plea of guilty to driving under the influence. Before accepting the plea, the court questioned Cameron on his present sobriety, obtaining assurances from Cameron that he was not currently under the influence of alcohol. The court asked other questions of Cameron to determine whether he entered the plea voluntarily, understood all of his rights, and comprehended the conse-

quences of his plea. Then, the court accepted the plea as "freely and intelligently made."

Appellant was sentenced to sixty days, suspended. He was placed on probation for three years under the supervision of the Drinking Driver Monitor Program. As a condition of the probation, appellant was ordered to proceed to the Health Department that day. Additionally, he was ordered to abstain from the consumption of alcohol.

Pursuant to the court's order, Cameron proceeded to the Health Department following the plea and sentencing proceeding. When Cameron appeared at the Department at approximately 10:20 a.m., the Supervisor for the Drinking Driver Monitor Program, Randall Blough, "detected a strong odor of alcohol." Mr. Blough proceeded to administer a passive breath test and a portable breathalyzer test, the passive breath test yielding "a point two oh [sic]" reading. The parties then returned to court.

Cameron testified on his own behalf before the trial judge, who first advised Cameron of his right not to testify.

BY THE COURT: Mr. Malone, before you ask Mr. Cameron any questions, he ought to understand that there ... there lies in all of this the potential for a contempt citation.

MR. MALONE: I understand, sir.

BY THE COURT: And that in that regard he need not testify, if he chooses not to. But if he does, he must do so truthfully, respond to the State's Attorney's questions, and potentially respond to questions that I would put to him.

MR. MALONE: I understand sir.

BY THE COURT: Do you understand that, Mr. Cameron?

A: Yes sir.

\* \* \* \* \* \*

BY THE COURT: You understand if I find ... That I can under these facts ... could find you to be in contempt of court, and could sentence you to as much as five months

and twenty-nine days in the County Jail? Do you understand that?

Q: Do you understand that Mr. Cameron?

BY THE COURT: Do you understand that?

A: Yes sir.

BY THE COURT: And knowing all that, is it still your intention to testify?

A: Yes sir.

BY THE COURT: Very well.

In his testimony, Cameron indicated to the court that he was an alcoholic, but he had not had anything to drink since twelve noon the prior day. The judge, finding that Cameron was presumptively intoxicated in the earlier proceeding, struck the plea entered by Cameron because he did not believe appellant had been competent to make a plea. Because the plea was stricken, so was the sentence. The court further found appellant in contempt for appearing before the court in an intoxicated condition. Sanctions for the contempt charge were deferred for a later time when Cameron was sober, and Cameron was sent to jail to ensure his sobriety for his next appearance. On March 23, 1994, appellant appeared again before the circuit court, at which time he declined to enter a plea and a new trial date was set.

Appellant noted a timely appeal of the contempt charge on March 24, 1994. On March 29, 1994, appellant presented a motion to dismiss the case against him on the basis that jeopardy had attached due to the acceptance of the plea and subsequent sentencing, and therefore, further trial on the matter was barred. The court denied appellant's motion to dismiss on April 25, 1994. This appeal followed.

## I. The Contempt Charge

Appellant argues that by finding him in contempt of court, the lower court erred in two ways. First, appellant asserts that the judge found him in contempt because he was an alcoholic, although his behavior was exemplary, and he did nothing to bring disrespect or disregard to the authority and

administration of the law. Second, appellant argues that no contempt order was filed in this case as required by Maryland Rule P3, and failure to file an order mandates reversal.

Appellee contends that the court did not find Cameron in contempt because he was an alcoholic; rather, it found that by appearing in court for the second time in an intoxicated condition, Cameron interfered with and obstructed the court's discharge of its duties and, therefore, his behavior was contemptible. Furthermore, appellee argues that no reversal of the finding is required because the courtroom proceedings are transcribed and the trial court dictated its findings to the court reporter, thereby satisfying the "written order" requirement of the rule. We agree with appellant that his behavior did not constitute contempt and, therefore, we need not address appellant's charge that the contempt order was not properly entered.

■ There are two classes of contempt recognized by law: criminal and civil. Civil contempt occurs when someone fails to do something ordered by a court in a civil action for the benefit of an opposing party. *See* 17 C.J.S. *Contempt* § 6 (1963); *Baker v. Baker,* 58 Md.App. 619, 622, 473 A.2d 1325 (1984), *McDaniel v. McDaniel,* 256 Md. 684, 687, 262 A.2d 52 (1970). Criminal contempt, on the other hand, is behavior directed against the dignity and authority of the court that tends to bring the court into disrepute or disrespect. *See* 17 C.J.S. *Contempt* § 5(1) (1963); *Baker,* 58 Md.App. at 622, 473 A.2d 1325; *McDaniel,* 256 Md. at 687, 262 A.2d 52. In the case *sub judice,* Cameron was charged with criminal contempt, not civil contempt.

There are two classes of criminal contempt: direct and constructive. Maryland Rule P1 defines both types of contempt. "Direct contempt" is "a contempt committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md.Rule P1(a). "Constructive contempt" is "a contempt which was not committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md.Rule P1(b). Because Cameron's behavior occurred in the

courtroom, he was charged with direct contempt rather than constructive contempt.

 Contempt has been defined more specifically in *Betz v. State,* 99 Md.App. 60, 65, 635 A.2d 77 (1994), wherein this court explained:

'[I]n a narrow sense, a contempt has been defined as a despising of the authority, justice, or dignity of the court; in a more general sense, a person whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties, has committed a contempt.'

(quoting *Goldsborough v. State,* 12 Md.App. 346, 355, 278 A.2d 623 (1971)).

Today, contempts are classified as civil or criminal and at least in theory either of these may be direct or constructive. The various categories are not mutually exclusive and in fact the nomenclature assigned to a contempt involves both classes.... Historically, criminal contempts were positive acts which offended the dignity or process of the court. Holding an offending party in contempt of court was designed to vindicate the authority and power of the court and punish disobedience to its orders.

*State v. Roll and Scholl,* 267 Md. 714, 727, 298 A.2d 867 (1973). In *Giant of Maryland v. State's Attorney for Prince George's Co.,* 274 Md. 158, 176, 334 A.2d 107 (1975), the Court of Appeals explained that

when the contempt is charged as criminal in nature, and the conduct is not shown to be plainly contemptuous on its face, proof beyond a reasonable doubt that the alleged contemnor possessed a contumacious intent is a necessary ingredient for an adjudication of guilt.

Thus, in order to find someone guilty of a direct, criminal contempt, the behavior must be contemptuous on its face or it must be shown that the person possessed contumacious intent.

We have found no cases, nor are any cited by the parties, in which the court has found a defendant, who is admittedly an alcoholic, in contempt of court merely for appearing in court in an intoxicated condition. Our research reveals a case wherein the Supreme Court of California upheld a lower court ruling that an *attorney* who appears at a client's preliminary hearing under the influence of alcohol and attempts to conduct a defense while intoxicated shows disrespect to the court and is in contempt. *Ridge v. State Bar of California*, 47 Cal.3d 952, 254 Cal.Rptr. 803, 805, 766 P.2d 569, 571 (1989). That holding, however, was based in large part upon the fact that attorneys are officers of the court and "misconduct by an attorney in open court tends to bring the legal profession and the administration of justice into disrepute." *In re Dibble*, 257 Or. 120, 478 P.2d 384, 386 (1970). Furthermore, the attorney in *Ridge* was demonstrably intoxicated, acting aggressively toward counsel and witnesses and exuding an odor of alcohol. *Ridge*, 254 Cal.Rptr. at 805, 766 P.2d at 571.

In *People v. Bonney*, 251 Ill.App.3d 921, 191 Ill.Dec. 501, 503, 623 N.E.2d 1387, 1389 (1993), the defendant had been found in indirect contempt of court for appearing in court for a prior appearance while under the influence of alcohol. This finding was reversed on appeal, however, because the State did not prove contempt "beyond a reasonable doubt" as required by the law; rather, it only satisfied the "preponderance of the evidence" standard. *Id.*, 191 Ill.Dec. at 504, 623 N.E.2d at 1390. The court seemingly indicated that the defendant could have been held in contempt for appearing in court intoxicated had the state satisfied the "beyond a reasonable doubt" standard. The court made note of the fact that the defendant in *Bonney* showed signs of intoxication during his court appearance. *Id.*, at 502, 523 N.E.2d at 1388. The probation officer who had accompanied Mr. Bonney to court the day in question testified that defendant smelled of alcohol, spoke very quickly, was very agitated, and did not stop speaking when the judge directed him to do so. *Id.*

■ In the case *sub judice,* Cameron's behavior during the plea agreement hearing and sentencing was not contemptuous on its face. He was in no way disruptive of the proceedings; he testified on his own behalf and articulately responded to all questions asked of him. He was not rebellious or insubordinate, nor was he wilfully disobedient or openly disrespectful. There is also no evidence that Cameron possessed contumacious intent. "Contumacious conduct" is defined as "[w]ilfully stubborn and disobedient conduct." Black's Law Dictionary, 5th ed. at 298. Even appellee concedes that Cameron appeared docile and compliant in court. In fact, when Cameron's attorney pointed out that there was no showing of wilful intent on Cameron's part and even though his passive blood test was high, he acted appropriately in every way, the trial judge agreed, and indicated that Cameron was "probably in a fairly constant state of intoxication as a result of tolerance." Furthermore, at the contempt hearing the judge apparently found that Cameron was not too intoxicated to waive his testimonial rights, because he advised Cameron of his rights and accepted his waiver and subsequent testimony.

■ It is crucial to note that it is unclear whether Cameron was even intoxicated at the plea proceeding. The trial judge assumed, based on the results of a passive breath test[1]

---

**1.** The state toxicologist has issued regulations governing tests of breath for alcohol which are contained in the "Regulations of the Toxicologist Post Mortem Examiners Commission State of Maryland Regarding Tests of Breath and Blood for Alcohol," January 1, 1990, as amended February 1, 1992 and July 1, 1992, as appears in Paton, *1994 Maryland DWI Manual,* Appendix I (1993). Upon review of these regulations, we find no mention of a passive breath test at all, let alone any discussion whether this type of test is approved in Maryland.

In 2 Nichols, *Drinking/Driving Lit.,* passive breath tests are discussed. These tests are conducted with a device that contains a fuel cell sensor which measures the alcohol content of a breath sample. 2 Nichols, *Drinking/Driving Lit.,* § 26:11, at 23 (1994). Because the sensor measures exhaled breath only, rather than deep lung air, its measurements have been criticized as being imprecise. *Id.* Additionally, the sensor may detect alcohol that has spilled on the clothing or in the vicinity of the person being tested. *Id.* Furthermore, the sensor does not specifically measure ethanol (the type of alcohol found in alcoholic beverages), so it may pick up other hydrocarbons including methane, carbon

administered an hour or so after the proceedings, that Cameron was intoxicated at the earlier proceeding.[2] The record shows that Cameron claimed to have imbibed at noon the previous day, but he testified he was not under the influence of alcohol at the time of the plea proceeding. In addition, Cameron claims he did not drink anything between the plea proceeding and his appearance at the Health Department. We have no way of knowing when he actually consumed the alcohol that registered on the passive breath test, let alone whether the passive breath test was even accurate.[3] Even

---

monoxide, and gasoline fumes. *Id.* Despite these criticisms, studies of the reliability of the passive alcohol sensor have confirmed its effectiveness. *Id.* at 87 (Supp.1994).

**2.** In Maryland, there are statutory presumptions which arise based on the results of breath tests administered in accordance with Md.Code Ann., Cts. & Jud.Proc., sections 10–302 through 10–306 (1994). *Langway v. State*, 94 Md.App. 407, 617 A.2d 1117 (1993). One presumption is that a breath test analysis yielding an alcohol concentration of 0.10 or more is prima facie evidence that a defendant was driving while intoxicated in violation of sections 16–113(a)(2), 16–813, or 21–902 of the Transportation Article. Md.Code Ann., Cts. & Jud.Proc., § 10–307(e).

These presumptions are inapplicable to the case at bar, however, because the result of the breath test administered to Cameron is not being used in connection with a charge of driving while intoxicated. Regardless, even if these presumptions applied with equal force in a proceeding to determine contempt of court due to intoxication, the presumption would not result in a finding that Cameron was *per se* intoxicated. First, the particular passive breath test used may not conform with the requirements of sections 10–302 through 10–306. Second, breath test readings do not give rise to an irrebuttable presumption of intoxication. Maryland's law is not one that statutorily declares it illegal to drive with a specified blood alcohol concentration. Many states have such *"per se"* laws that define the offense in terms of the blood alcohol content. Maryland, however, has chosen not to adopt such a law and, therefore, additional evidence is required to demonstrate intoxication. Thus, even if the statute applied in this case, Cameron would have only been presumptively intoxicated, which presumption could easily be rebutted by his exemplary behavior in the courtroom during the plea proceeding.

**3.** The result of Cameron's passive breath test may be questioned for several reasons. First, Cameron is an admitted alcoholic. Alcohol is eliminated from the body in a process referred to as "burning off." 2 Nichols *supra* note 1, § 23:37, at 129. The rate of burnoff differs depending on many factors, including, among others, drug and alcohol

assuming the results of the passive breath test were correct, we cannot assume the alcohol that was detected was consumed prior to the plea proceeding. While we can understand the frustration of the able and experienced trial judge, given Cameron's docile and responsive conduct in court, it was error for the trial judge to hold him in contempt. His conduct was not contemptuous on its face nor was it wilfully stubborn or disobedient. Thus, the contempt finding must be reversed.

## II. Striking the Judgment

■ Cameron argues next that the trial court erred in striking the judgment that was imposed based on his guilty plea. First, appellant contends that the judge had no authority to strike the judgment, and second, he asserts that there was no factual basis for doing so. Conversely, appellee claims that it was incumbent on the judge to strike the judgment once he discovered that Cameron was incompetent to tender a knowing and voluntary plea. While we do not agree with all

---

use, amount of alcohol consumed, metabolic tolerance, body composition and temperature, genetic and racial differences, gender, liver disease, physical activity, and the time of day of consumption. *Id.* § 23:43, at 153. Alcoholics have been shown to have an increased rate of elimination of alcohol due to their regular, repeated consumption of large quantities of alcohol, which results in increased tolerance and more rapid metabolic processes. *Id.* § 23:44 at 153–54, § 23:53 at 168. Since alcoholics eliminate alcohol more rapidly, it would follow that to maintain a blood alcohol concentration of .20 would have required the consumption of an exceedingly high quantity of alcohol, something Cameron denied having happened.

Second, Cameron's appearance and behavior in court does not comport with someone who measures a .20 BAC. When a BAC reading of .09–.25 is detected, a person typically suffers a loss of critical judgment, impairment of memory and comprehension, and decreased sensitory response and reaction time. S. Brent & S. Stiller, *Handling Drunk Driving Cases*, § 4:2 at 52. A BAC of between .18 and .30 has been associated with exaggerated emotional states, impaired balance, and slurred speech. *Id.* Cameron did not exhibit any of these reactions; he was polite and testified responsively and competently to questions posed to him. In any event, the scientific accuracy of the test was never established for the purpose of this proceeding—a criminal contempt proceeding. In the instant case, there are no statutory presumptions.

of appellant's reasoning, we do agree that in this case the circuit court erred in striking the judgment.

■ Appellant is incorrect in arguing that a judge can never strike a judgment absent a motion by defendant to withdraw a plea. Maryland courts have recognized that there are occasions when a sentence must be vacated. *Flaherty v. State*, 322 Md. 356, 365, 587 A.2d 522 (1991) (quoting *Rojas v. State*, 52 Md.App. 440, 450 A.2d 490 (1982) (finding that when a material term of a sentence based on a plea agreement is unenforceable, the appropriate remedy is to vacate the entire sentence and corresponding plea agreement)). Appellant is correct, however, when he says that there is no factual basis for the judge's striking of the plea and judgment in this case.

■ Maryland law requires that guilty pleas be entered voluntarily:

> The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea. . . .

Md.Rule 4–242(c) (1994). Upon exhaustive research, we have found no cases in Maryland or in other jurisdictions that presume that a guilty plea made by an allegedly intoxicated defendant was involuntarily made. Although not precisely on point, there are cases in other jurisdictions in which defendants have attempted to withdraw their guilty pleas by claiming intoxication at the time the pleas were entered. *See, e.g., United States v. Teller*, 762 F.2d 569 (7th Cir.1985); *People v. Torra*, 191 A.D.2d 738, 594 N.Y.S.2d 419, *appeal denied*, 81 N.Y.2d 1021, 600 N.Y.S.2d 209, 616 N.E.2d 866 (1993); *People v. Thompson*, 169 A.D.2d 463, 564 N.Y.S.2d 341, *appeal denied*, 77 N.Y.2d 967, 570 N.Y.S.2d 501, 573 N.E.2d 589 (1991); *Doughman v. State*, 351 N.W.2d 671 (Minn.App.1984).

In *Torra*, the New York Supreme Court, Appellate Division, was faced with a defendant who sought to withdraw his guilty

plea on the ground that he had been intoxicated at the time it was rendered. 594 N.Y.S.2d at 420. Holding that defendant was not entitled to withdraw his plea, the appellate court explained that the county court had made proper inquiry into the defendant's understanding of the nature of the proceeding and the rights he was giving up, and in fact, had even inquired about his use of alcohol and whether he was under its influence at the time the plea was given. *Id.* Since the lower court, after proper inquiry, found that the plea was entered voluntarily, knowingly, and intelligently, the appellate court refused to disturb that finding. *Id.*

Similarly, in *Thompson*, 564 N.Y.S.2d at 341, the appellate court held that even though the defendant alleged he was confused and intoxicated by methadone at the time he entered a guilty plea, the plea could not be withdrawn because "[t]he record amply demonstrate[d] that defendant knowingly, voluntarily and intelligently entered his guilty plea." (citations omitted). The Court of Appeals of Minnesota was also faced with such a case. *Doughman*, 351 N.W.2d at 674. That court also found that petitioner's claim, that he was so intoxicated no plea could have been intelligently made, was unsupported by the record. *Id.* at 674–75.

The Seventh Circuit Court of Appeals also heard argument in a case where a defendant claimed that his guilty plea was not knowing, voluntary, and intelligent because it was entered into while he was under the influence of drugs and alcohol. *Teller*, 762 F.2d at 571. The district court, during Teller's original plea hearing, had found that he was composed and articulate. *Id.* at 572. Teller's counsel also assured the judge that he had no qualms about the court's accepting the guilty plea. *Id.* at 572–73. Thus, the Seventh Circuit would not permit Teller to withdraw his guilty plea, despite his claim of intoxication and impairment. *Id.* at 580.

The holdings in the above cases guide us toward our conclusion that guilty pleas made by allegedly intoxicated defendants are not presumptively involuntary. Those courts have been unwilling to find that guilty pleas entered by an intoxicated

defendant are presumptively made unknowingly, involuntarily, or unintelligently. In disallowing withdrawal of such guilty pleas, these other jurisdictions, in fact, contemplate that guilty pleas may be knowingly entered into notwithstanding the defendant's intoxicated condition, provided the record supports the plea and the trial judge finds that the defendant is composed, articulate, and understands the proceedings.

Here, the trial judge made a proper inquiry of Cameron at the time the plea was entered to determine whether the plea was being offered voluntarily and intelligently. Before the plea was entered, the judge inquired as to whether Cameron was currently under the influence of alcohol. Then he obtained assurances by Cameron's counsel that he had no doubt about his client's competence and ability to understand the nature of the proceedings.[4] Cameron's attorney questioned him, explaining the potential maximum sentence for driving under the influence, and verifying that Cameron understood the nature of the charges against him. He also explained the consequences of entering a plea and obtained assurances that Cameron understood all of his rights. Cameron stated that he was not offered anything other than the plea agreement to enter the plea, he was not threatened or coerced in any way, and he was entering the plea freely and voluntarily. The judge then asked Cameron's attorney whether he was satisfied that Cameron fully understood the nature of the charges and the consequences of his plea, and then, the judge stated, "The plea is accepted as freely and intelligently given."

It was not until later that morning, when Cameron was brought back to court because he was thought to be intoxicated, that the judge decided it was necessary to strike the plea because he no longer believed that Cameron had been competent to make the guilty plea. This decision was erroneous. The record indicates that proper inquiry was made of Cameron and he fully understood all of his rights and the effect of

---

4. We must assume that Cameron's attorney, who was closer physically to appellant, would have detected a strong presence of alcohol or recognized that he was intoxicated and notified the court accordingly.

the plea. Further, there is no direct proof that Cameron was intoxicated at the plea proceeding, and even if he were, we refuse to presume that he was incompetent merely due to intoxication. Thus, we hold that the circuit court erred in striking his plea and vacating the judgment against him.

### III. Admissibility of Chemical Test Evidence

Appellant's third argument is that chemical test evidence of his intoxication was improperly permitted in his criminal contempt proceeding. Because we hold that the circuit court erred in finding appellant in contempt of court due to his appearance in an apparently intoxicated condition, we need not address whether the chemical test evidence should have been admitted in the contempt hearing.

### IV. Denial of Motion to Dismiss

Appellant's final argument is that the circuit court erred in denying his motion to dismiss the charges against him as a violation of the prohibition against double jeopardy. He contends that, since he had already been convicted of driving under the influence, subsequent prosecution for driving intoxicated and the lesser-included offense of driving under the influence was barred by the Double Jeopardy Clause. Appellee disagrees, explaining that when a guilty plea is withdrawn or set aside, the parties are returned to their original positions and retrial is allowed. Further, appellee contends that Cameron's attempt to enter a guilty plea while having an alcohol concentration reading of .20 was tantamount to fraud, and a guilty plea procured by a defendant's fraud does not bar subsequent prosecution. We disagree with appellee.

First, we must again stress that there is no direct evidence that Cameron was intoxicated at the time he entered his plea. The trial judge presumed that Cameron was intoxicated, given the high concentration of alcohol evidenced in his blood just over an hour later. It cannot be said that appellant procured his guilty plea by fraud when there is no conclusive evidence that a fraud was committed. Accordingly, appellee's argu-

ment that subsequent prosecution is allowed due to appellant's fraudulent conduct is without merit.

This leaves us with appellee's contention that the parties are to be returned to their original positions and that retrial is allowed when a guilty plea is withdrawn or set aside. This proposition is supported by law in certain circumstances. *See, e.g., State v. Bittinger,* 314 Md. 96, 102, 549 A.2d 10 (1988) (finding that a defendant who succeeded in setting aside his guilty plea after arguing there was no factual basis for it would be returned to his original position and could be retried); *Rojas v. State,* 52 Md.App. 440, 450 A.2d 490 (1982) (finding that recision of the entire plea agreement including the guilty plea, due to an unenforceable term of the agreement, places the parties back in their original position). The cases that support appellee's proposition, however, do not contemplate situations in which a judge *erroneously* strikes a guilty plea and sentence; rather, they deal with situations in which the defendant initiated withdrawal of a plea or a term of the plea was found to be unenforceable. In a case like the one *sub judice,* in which appellant did not seek to have his plea set aside but the judge, *sua sponte,* struck the plea and corresponding sentence, it does not necessarily follow that retrial would not collide with the prohibition against double jeopardy.

We pause at this juncture to note that appellant seems to seek remedies in the alternative. In his brief, he argues that "the trial judge had no authority to strike the judgment" and "[e]ven if the trial judge had had the authority to strike the judgment there was no basis to do so in this case." Thus, it appears that he seeks restoration of the original plea agreement and judgment.

On the other hand, in his "Motion to Dismiss" below, he alleged that "because of the acceptance of the plea and subsequent sentencing, further trial in this matter is constitutionally barred as that jeopardy has already attached." He then requested "that this case be dismissed"; "that further prosecution in the matter be barred and [f]or such other and further relief as to this cause may seem just and proper."

At the time of the filing of the Motion to Dismiss (indeed, up until the effective date of the mandate herein), "this case," *i.e.*, the charges against the appellant were the greater charge of DWI and the lesser charge of DUI. Thus, it appears that he sought dismissal of all charges.

In any event, we shall rely on the precedent set in *Flaherty v. State*, 322 Md. 356, 587 A.2d 522 (1991). There, the defendant had been charged with driving while intoxicated. *Id.* at 358, 587 A.2d 522. He entered a plea of guilty to driving while under the influence of alcohol, a lesser-included charge. *Id.* The lower court judge questioned defendant to be certain that the plea was knowingly and voluntarily entered, and after he was convinced, the judge accepted the plea. *Id.* Probation before judgment was granted by the judge and a written order was completed. *Id.* at 359, 587 A.2d 522. Due to a series of odd circumstances, defendant appeared before the judge again later, the judge struck the guilty plea, and a date was set for trial of the original charge of driving while intoxicated. *Id.* at 362, 587 A.2d 522. On appeal, the Court of Appeals found that defendant's plea had been properly tendered and accepted. *Id.* at 363, 587 A.2d 522. In addition, "further proceedings in th[e] case would violate [the defendant's] constitutional and common law right not to be twice placed in jeopardy for the same offense." *Id.* The court explained:

> The Double Jeopardy Clause of the Fifth Amendment protects, among other things, against a second prosecution for the same offense after conviction. Striking the finding of guilt and subjecting Flaherty to a new trial would, under the circumstances of this case, violate the constitutional prohibition against placing Flaherty twice in jeopardy for the same offense.

*Id.* at 365, 587 A.2d 522 (citations omitted). Accordingly, the court held that the finding of guilt and the sentence were incorrectly set aside, and they remanded for reinstatement of the probation before judgment and to grant defendant's motion to dismiss further proceedings. *Id.* at 366–67, 587 A.2d 522.

As in *Flaherty,* if the trial court's erroneous striking of the judgment were not set aside, appellant would be twice placed in jeopardy for the same offense. On remand, the circuit court should reinstate Cameron's guilty plea and sentence and grant his motion to dismiss insofar as it relates to further proceedings on the charge of driving while intoxicated.

JUDGMENTS OF THE CIRCUIT COURT FOR ALLE-GANY COUNTY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT IN-CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY ALLEGANY COUNTY.